Teresa Faye MARTIN, Appellant,

v.

DEPARTMENT OF PUBLIC
SAFETY, Appellee.

No. 03–97–00545–CV.

Court of Appeals of Texas,
Austin.

March 12, 1998.

Willie Schmerler, Biggers & Schmerler,
P.C., Austin, for Appellant.

John C. West, Jr., Chief of Legal Services,
Janette L. Ansolabehere, Loren Svor, Asst.
Gen. Counsels, Texas Department of Public
Safety, Austin, for Appellee.

Before ABOUSSIE, JONES and KIDD,
JJ.

KIDD, Justice.

The Department of Public Safety ("Department") suspended Teresa Faye Martin's driver's license and the county court at law affirmed the administrative order. Martin appeals the trial court's judgment. We will affirm.

## BACKGROUND

On December 8, 1996, a Department officer observed Teresa Faye Martin driving down a road in Austin. The officer saw Martin drive up on a curb, turn at a high rate of speed, and finally drive into a ditch. The officer stopped Martin, administered field sobriety tests, observed several facts that suggested she might be intoxicated, and arrested her for driving while intoxicated. *See* Tex. Penal Code Ann. § 49.04 (West Supp.1998).

About one and one-half hours later at the police station, the officer approached Martin to obtain a breath specimen to determine the alcohol concentration in her body. The officer administered warnings to Martin, both orally and in writing, about certain consequences of her giving a specimen. The warnings were set forth on a pre-printed form commonly used by the Department, which the Department calls a "DIC–24." The Department presumably intended the form to set forth warnings required by the Texas Transportation Code to be given by officers in like situations. *See* Tex. Transp. Code Ann. § 724.015 (West 1998). Among the warnings in the Transportation Code is a statement that the defendant's driver's license will be suspended automatically if the breath test reveals the licensee "had an alcohol concentration of [0.10 or more per 210 liters of breath]." *See id.* § 724.015(3); *see also* Tex. Penal Code Ann. § 49.01(2)(B) (West 1994). After receiving the warnings, Martin agreed to give a breath specimen.

A certified breath test operator administered two breath tests to Martin. The first test disclosed an alcohol concentration of 0.190. The second test, administered about three minutes after the first, disclosed an alcohol concentration of 0.194. Both test results were well above the 0.10 level of legal intoxication. Upon failure of the breath test, Martin's license was automatically suspended.[1]

Martin requested an administrative hearing on whether the Department's suspension should be sustained. *See id.* § 524.031 (West 1998). The issues at the hearing were: (1) whether Martin had an alcohol concentration of 0.10 or more per 210 liters of breath while operating her vehicle in a public place, and (2) whether the officer had reasonable suspicion to stop or probable cause to arrest her. *See id.* § 524.035(a) (West 1998). After an evidentiary hearing, the administrative law judge ("ALJ") found, among other things, that Martin was "properly asked to submit a specimen of breath ... as demonstrated by the Department's statutory warning form." Furthermore, the ALJ found that Martin was operating her vehicle in a public place with an alcohol concentration of 0.10 grams or greater of alcohol per 210 liters of breath "as determined by Defendant's submission to a breath ... test as requested." Consequently, the ALJ rendered an administrative order sustaining the Department's suspension of Martin's license. That order became final and appealable when the ALJ signed it. *See id.* § 524.035(e), .041(a) (West 1998).

Martin sought judicial review of the ALJ's order in a county court at law. *See id.* § 524.041(a), (b). Martin raised two issues. First, she argued that the Department's pre-printed warning form did not comply with the statutory warnings mandated by Texas Transportation Code section 724.015(3). She contended the allegedly improper warning rendered her consent to the breath test in-

---

1. Upon receipt of breath-test results such as these, an officer must at least attempt to serve a "notice of driver's license suspension" upon the licensee. Tex. Transp. Code Ann. § 524.011(a)(1), (b)(1) (West 1998). The officer must also send a copy of the notice to the Department within five business days of the date of the arrest. *Id.* If the officer is unable to serve the licensee with the notice, the Department deter-mines whether to suspend the license and notifies the licensee of any such determination. *Id.* § 524.012(a), .013(a) (West 1998). The record does not contain the notice of suspension; therefore, it does not reveal whether Martin received notice of her driver's license suspension from the arresting officer or from the Department. In any event, Martin does not contend that she failed to receive such a notice.

voluntary and that evidence of the breath-test results was consequently inadmissible. Second, she argued the evidence was legally and factually insufficient to support the ALJ's finding that Martin had the requisite alcohol concentration while she was driving. The trial court affirmed the ALJ's order.

Martin appeals that judgment, raising the same two issues she argued before the trial court.

### DISCUSSION

Section 2001.174 of the Administrative Procedure Act governs the scope of our review of this cause. Tex. Transp. Code Ann. § 524.002(b) (West 1998); Tex. Gov't Code Ann. § 2001.174 (West 1998). Pursuant to section 2001.174, we review an ALJ's determination of a purely legal question de novo. *Firemen's Pension Comm'n v. Jones*, 939 S.W.2d 730, 735 (Tex.App.—Austin 1997, no writ). We review an ALJ's finding of fact for support by substantial evidence. Tex. Gov't Code Ann. § 2001.174; *Texas Health Facilities Comm'n v. Charter Medical–Dallas, Inc.*, 665 S.W.2d 446, 452 (Tex.1984).

We first address Martin's contention that her breath-test results were inadmissible because the Department failed to administer properly the warning required by section 724.015(3) of the Transportation Code. That section reads:

> Before requesting a person to submit to the taking of a specimen, the officer shall inform the person orally and in writing that: ... if the person is 21 years of age or older and submits to the taking of a specimen designated by the officer and an analysis of the specimen shows the person *had* an alcohol concentration of [0.10 or more per 210 liters of breath], the person's license to operate a motor vehicle will be automatically suspended for not less than 60 days, whether or not the person is subsequently prosecuted as a result of the arrest.

Tex. Transp. Code Ann. § 724.015(3) (West 1998) (emphasis added). The pre-printed form the Department commonly uses to administer this warning states:

> If you give the specimen and analysis shows that you *have* an alcohol concentration of 0.10 or more, your license, permit, or privilege to operate a motor vehicle will be suspended or denied for at least sixty (60) days, whether or not you are prosecuted for this offense.

(Emphasis added.)

■ Martin focuses on the difference between the tenses of the verb "to have" in the statute and pre-printed form. She argues the legislature intended that an administrative license suspension is a consequence of a person's being intoxicated while driving, not being intoxicated while taking a breath test. She contends the legislature used the word "had," the *past* tense of the verb, in section 724.015(3) to convey this idea. According to Martin, the Department's pre-printed form incorrectly admonishes licensees that administrative license suspension is the consequence of their being intoxicated when they take a breath test, *not* when they were driving.

To resolve this issue, we must determine the proper construction of section 724.015(3), an issue of law. We, therefore, determine this issue de novo. *See Firemen's Pension Comm'n*, 939 S.W.2d at 735.

■ The legislature's use of the word "had," as opposed to "have," in section 724.015(3) is somewhat ambiguous. That is, we agree that in isolation the statutory warning does not make clear whether the suspension will be imposed as a consequence of the licensee's state of intoxication at the time he or she was driving or at the time he or she takes the breath test. We do not construe a statutory provision in isolation, however; we construe it in the context of the statute as a whole. *Texas Citrus Exchange v. Sharp*, 955 S.W.2d 164, 169 (Tex.App.—Austin 1997, no writ).

Several other statutory provisions pertaining to administrative license suspensions for failure to pass a test for intoxication shed light on this issue. We first note the language of section 724.015(3) itself: a license suspension is *automatic* after a failed breath test, "whether or not the person is subsequently prosecuted as a result of the arrest."

Tex. Transp. Code Ann. § 724.015(3). Second, upon failure of a breath test, an arresting officer must serve a "notice of driver's license suspension" on the licensee if the licensee is still in custody. *Id.* § 524.011(a)(1), (b)(1). The suspension automatically becomes effective forty days after such service, unless the licensee timely requests a hearing on the suspension. *See id.* §§ 524.021(a)(1), .031. In that event, the request for the hearing "stays" the suspension until the date of the ALJ's final decision. *Id.* § 524.032(d). Furthermore, the purpose of the administrative hearing is to determine whether a previously imposed suspension will be "sustained" or "rescinded." *See id.* § 524.035(b), (c). Only at this review hearing does the issue of the licensee's level of intoxication *while driving* come into play. *See id.* § 524.035(a)(1)(A). The ALJ must rescind the suspension at the hearing if the ALJ does not find from a preponderance of the evidence that the person had an alcohol concentration of at least 0.10 *while driving.* *Id.* § 524.035(c). That does not mean, however, that the suspension was not authorized in the first instance upon failure of a breath test. These provisions reveal that the failure of a breath test after an arrest for driving while intoxicated triggers a license suspension, regardless of whether the suspension will ultimately be sustained in an administrative hearing.[2]

A sister court recently reached the same conclusion on the very same issue: whether the Department's standard warning properly tracks section 724.015(3). *See Texas Dep't of Pub. Safety v. Butler,* 960 S.W.2d 375, 377–78, (Tex.App.—Houston [14th Dist.] 1998, no pet.). The court in *Butler* noted the statutory warnings cannot possibly be intended to reference a licensee's state of intoxication while driving because an after-the-fact breath test can never reveal the licensee's exact alcohol concentration at the time of the offense, since some delay between arrest and testing is inevitable. *Id.* at 377–78 (citing *Owen v. State,* 905 S.W.2d 434, 439 (Tex. App.—Waco 1995, pet. ref'd)).

Because the Transportation Code contemplates that an officer may issue a suspension immediately upon a licensee's failure of a test for intoxication, the Department's pre-printed warning form properly draws licensees' attention to the consequences of their failure of intoxication tests. The Department need not further warn licensees that they may ultimately defeat suspension by showing they did not have the requisite alcohol concentration *while driving.* *Butler,* at 377–78; *cf. Erdman v. State,* 861 S.W.2d 890, 893–94 (Tex.Crim.App.1993) (in context of criminal prosecution for driving while intoxicated, court held officer *may not* warn licensee of additional, non-statutory consequences of refusing breath test, even if consequences would in fact follow). We, therefore, reject Martin's challenge to the admissibility of the breath-test results based on the allegedly improper warning on the Department's pre-printed form. We overrule Martin's first argument.

■ The second issue Martin raises is a challenge to the legal and factual sufficiency of the evidence supporting the ALJ's finding that Martin had the requisite alcohol concentration while driving. We do not review the finding under a traditional evidentiary scope of review applied by appellate courts. As explained above, we review an ALJ's finding of fact pursuant to the substantial evidence rule. In conducting a substantial-evidence review, we may not substitute our judgment for the ALJ's as to the weight of the evidence on questions committed to the ALJ's discretion. Tex. Gov't Code Ann. § 2001.174; *Charter Medical,* 665 S.W.2d at 452. The evidence may actually preponderate against the ALJ's finding and we must still uphold it if enough evidence suggests the ALJ's determination was within the bounds of reasonableness (*i.e.,* if substantial evidence supports the ALJ's finding). *Id.* at 452–53.

■ The record contains ample evidence suggesting that Martin had the prohibited alcohol concentration when she was driving. First, the breath tests administered about one and one-half hours after Martin's arrest indicate she had an alcohol concentration of

**2.** These consequences also follow failure of intoxication tests after arrests for intoxication assault and intoxication manslaughter involving the operation of a motor vehicle. *See* Tex. Transp. Code Ann. § 524.011(a) (West 1998); Tex. Penal Code Ann. §§ 49.07, .08 (West 1994).

almost twice the legal limit when the tests were administered. The officer arrested Martin and transported her to the police station where the test was administered; presumably she had no opportunity to imbibe further before the test. Moreover, the arresting officer testified that he saw Martin driving recklessly by driving up on a curb and into a ditch. The officer also testified that after he stopped her, she smelled of alcohol, her speech was slurred, and she failed several field sobriety tests.

■ Martin contends this evidence is not enough to establish her alcohol concentration at the time of the arrest. She contends the Department had the burden of providing extrapolation evidence [3] to connect her after-the-fact test results with her alcohol concentration at the time of her arrest. We disagree.

■ The Department bore the burden of proving Martin had an alcohol concentration of at least 0.10 when she was driving. *See* Tex. Transp. Code Ann. § 524.035(a)(1)(A). The results of the breath test and the officer's observations of Martin's behavior at the time of arrest reasonably support the inference that she had an alcohol concentration of 0.10 when she was driving. The Department did not have the burden of disproving alternative hypotheses when attempting to prove its case. *Cf. Geesa v. State*, 820 S.W.2d 154, 156 (Tex.Crim.App.1991) (State need not disprove alternative hypotheses when attempting to prove criminal offenses). Many courts, including this one, have sustained convictions for driving while intoxicated, in which a much higher standard of proof applied,[4] based in part on after-the-fact test results without expert extrapolation evidence. *See Forte v. State*, 707 S.W.2d 89 (Tex.Crim.App.1986); *Daricek v. State*, 875 S.W.2d 770, 772 (Tex.App.—Austin 1994, pet.

ref'd); *Owen*, 905 S.W.2d at 438–39; *Wagner v. State*, 720 S.W.2d 827, 830 (Tex.App.—Texarkana 1986, pet. ref'd). Furthermore, nothing in the Transportation Code requires the Department to present specific extrapolation evidence.

Martin had an opportunity to defend against the Department's allegations by presenting evidence that her alcohol concentration increased between her arrest and the breath test. *See Forte*, 707 S.W.2d at 95. Martin did not present any such evidence. We overrule Martin's second argument.

## CONCLUSION

Having overruled Martin's arguments, we affirm the judgment of the county court at law.

3. The rate at which alcohol is digested or metabolized varies in each person at any given time according to several factors. Extrapolation evidence explains the correlation between the breath test results and the level of intoxication at the time of arrest in a given case. Martin focuses on the fact that the second test showed a greater alcohol concentration than the first. Martin argues that this evidence suggests the concentration was increasing, and that extrapolation back to the time of arrest would necessarily show she was below 0.10 while driving. It is just as likely that the difference between the test

results merely reflects the normal deviation in test results or the care with which the tests were administered.

4. The State must prove a criminal offense beyond a reasonable doubt. Tex. Penal Code Ann. § 2.01 (West 1994). The State must prove its case in an administrative license suspension proceeding by a preponderance of the evidence. Tex. Transp. Code Ann. § 524.035(a) (West 1998).