TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-98-00195-CV






Robert Edgar Blankenbeker, Appellant



v.



Texas Department of Public Safety, Appellee






FROM THE COUNTY COURT AT LAW NO. 1 OF HAYS COUNTY


NO. 5814, HONORABLE HOWARD S. WARNER, II, JUDGE PRESIDING 






 Robert Edgar Blankenbeker appeals from the trial court's affirmance of the
administrative law judge's (ALJ) decision to sustain the suspension of his driver's license for
driving with an illegal alcohol-concentration level. Appellant contends the trial court should have
reversed the ALJ's decision sustaining the suspension because the ALJ improperly admitted
evidence and because the ALJ's final decision was not supported by substantial evidence. We will
modify the judgment and affirm it as modified.


BACKGROUND


 Appellant was arrested on November 1, 1997 for driving while intoxicated. An
officer from the San Marcos Police Department (SMPD) stopped him after observing erratic
driving. He was arrested after performing poorly on field sobriety tests. Ninety-five minutes
later, he provided breath specimens to the SMPD. The specimens revealed that appellant had .169
and .164 grams of alcohol per 210 liters of breath--above the intoxication threshold of .10 grams. 
The SMPD served a license suspension notice. Appellant challenged the suspension, but the ALJ
upheld it. Appellant requested review in the trial court, which affirmed the suspension.


DISCUSSION


 Different standards of review apply to different determinations on reviews of
administrative rulings. Tex. Gov't Code Ann. § 2001.174 (West 1998). Courts review de novo
interpretations of constitutional or statutory provisions. Gov't Code § 2001.174(2)(B); see also
In re Humphreys, 880 S.W.2d 402, 404 (Tex. 1994). Courts can reverse decisions for abuses of
discretion. Gov't Code § 2001.174(2)(F). Finally, courts can reverse decisions not supported by
substantial evidence. Gov't Code § 2001.174(2)(E). These errors are reversible only if they
prejudice substantial rights of the appellant. Id.

 Appellant raises four points of error. By his second and third points, he complains
of the ALJ's admission of evidence. He contends the ALJ should have excluded the police
reports, the statutory warnings sheet (DIC-24), and his intoxilyzer test-results printout because
they were not provided to him as promptly as State Office of Administrative Hearings (SOAH)
rules require. See 1 Tex. Admin. Code 159.13(1) (1998). (1) He also contends that his intoxilyzer
test-results printout should not have been admitted because of various problems with its nature and
the predicate laid for it. By his first and fourth points, he argues that the record lacks substantial
evidence to support the ALJ's findings that his breath-alcohol level was impermissibly high and
that he committed the offense on November 8, 1997.

 The admissibility of the intoxilyzer test results is critical. Unlike the penal offense
of driving while intoxicated, for which intoxication can be proved either by diminished faculties
or impermissibly high alcohol concentration, license suspension is predicated entirely on an
impermissible alcohol concentration level. Compare Tex. Penal Code Ann. §§ 49.01(2) & 49.04
(West 1994) (DWI) with Tex. Transp. Code Ann. § 524.012 (West 1998) (license suspension).

 We review administrative rulings on the admissibility of evidence under the same
abuse of discretion standard we apply to trial courts. See City of Amarillo v. Railroad Comm'n,
894 S.W.2d 491, 495 (Tex. App.--Austin 1995, writ denied). A court abuses its discretion if it
acts arbitrarily or unreasonably, or without reference to guiding rules and principles. Downer v.
Aquamarine Operators, Inc., 701 S.W.2d 238, 241-42 (Tex.1985).

 Blankenbeker contends three exhibits admitted into evidence were not provided to
him timely. He complains of the admission of Exhibit 1 (police report), Exhibit 2 (DIC-24 form
statutory warnings), and Exhibit 4 (the breath-test result slip). He complains that the documents
were produced too long after his request and too short a time before the hearing.

 If a party requests production of a document contained in the DPS's files, the DPS
must produce it within five days of the DPS's receipt of the request; the DPS cannot introduce into
evidence a document "that has not been made available by the department to the defendant
pursuant to request." 1 Tex. Admin. Code § 159.13(1) (1998). Any request for documents not
in the department's possession shall be denied by the ALJ. Id. The DPS received Blankenbeker's
request for Exhibits 1, 2, and 4 on November 12, 1997. The DPS, however, did not receive the
documents from the SMPD until November 21, 1997. (2) The DPS did not send the documents to
Blankenbeker until 4:37 p.m. on December 1, 1997.

 Resolution of the objection that the documents were not produced within five days
of the request requires defining whether non-working days are included. The SOAH rule
regarding computation of time, like the rule of civil procedure then effective, provides that, when
computing timetables of five days or less, neither the day of the event nor weekend days and legal
holidays count in the period. Compare 22 Tex. Reg. 12740 (1997) (amending 1 Tex. Admin.
Code § 155.19) with Tex. R. Civ. P. 4. This amendment of section 155.19 was not effective until
January 2, 1998, a month after the ALJ's hearing; before the amendment, section 155.19 dealt
with replacing ALJs, and there was no section dealing with time computation. Compare 22 Tex.
Reg. 12740 (1997) with 1 Tex. Admin. Code § 155.19 (1998). Whether a special counting rule
applies to five-day periods is critical because DPS did not produce the documents until ten
calendar days after receiving them.

 We conclude the trial court did not err by failing to overturn the ALJ's admission
of the evidence. We are mindful that an agency's interpretation of its own rules is entitled to
deference by the courts. See Public Util. Comm'n v. Gulf States Utils. Co., 809 S.W.2d 201, 207
(Tex.1991); Texas Citrus Exch. v. Sharp, 955 S.W.2d 164, 169 (Tex. App.--Austin 1997, no
pet.). The absence of a SOAH time-computation rule, the contemporaneous existence of the civil
procedure rule's special five-day provision, and the consonance of that rule and the current SOAH
rule persuade us that the ALJ did not abuse his discretion by applying the special five-working-day
rule. The DPS received the documents on November 21, 1997, a Friday. The fifth calendar day
after that was November 26, 1997. The ALJ's admission of the documents, received on December
1, 1997, underscores that he applied the special short-term rules. Under the five-working-day
rule, the first day that counted was Monday, November 24. The next two days counted, but the
following four did not--November 27-28 were legal holidays for Thanksgiving, and November
29-30 were weekend days. The date of filing, Monday, December 1, 1997, was therefore only
the fourth working day after the DPS had the documents in its files. We conclude that the ALJ
did not abuse his discretion by finding that the DPS produced the document within five days of
the date production was possible.

 Nor did the ALJ abuse his discretion by concluding that the DPS produced the
documents long enough before the hearing. The SOAH rule itself is somewhat confusing. It
provides:


To be offered in a telephone hearing, tangible/documentary evidence must be
marked and filed with the office and all parties at least five days prior to the
scheduled hearing, but in no event later than two days prior to the scheduled
hearing, unless otherwise agreed by the parties.



1 Tex. Admin. Code § 159.25(c) (1998) (emphasis added). The language immediately after the
italicized phrase arguably makes the five-day period in the italicized phrase surplusage. The DPS
faxed the documents on December 1, 1997, two days before the hearing on December 3, 1997. 
We overrule point three. (3)

 By point of error two, Blankenbeker complains of the admission of Exhibit 4, the
test-results printout produced by the intoxilyzer. He complains that the printout was not properly
authenticated, was hearsay, and was irrelevant.

 There was no abuse of discretion in finding the authentication sufficient. 
Blankenbeker complains that, because SMPD administered the test and produced the printout,
SMPD authentication is required. He cites us to no authority requiring SMPD testimony for a
record from DPS files. Rule of Evidence 902(4) provides that 


[e]xtrinsic evidence of authenticity as a condition precedent to admissibility is not
required with respect to . . . [a] copy of an official record or report or entry
therein, or of a document authorized by law to be recorded or filed and actually
recorded or filed in a public office . . . by certificate complying with paragraph (1) 
. . . of this rule.


An officer arresting a person for DWI must send to the DPS a report identifying the arrested
person and giving the analysis of the specimen. See Tex. Transp. Code Ann. § 524.011(b) (West
1998). Though created by SMPD, the test-results printout was filed with DPS in compliance with
this statute. It is a DPS record. The copy of the printout is stamped with the DPS seal and signed
with an attestation that the printout is contained in DPS files, satisfying Rule 902.

 There was no abuse of discretion in overruling the hearsay objection. Blankenbeker
complains that the printout contains hearsay statements of his name and birth date, and the names
of the arresting officer and the intoxilyzer operator. But public records are excepted from the
hearsay exclusion if they set forth fact-findings resulting from an investigation made pursuant to
authority granted by law or if they set forth matters observed pursuant to legal duty regarding
matters about which there was a duty to report. Tex. R. Evid. 803(8). (4) Blankenbeker argues that,
under the former criminal rules of evidence, reports by police officers and law enforcement
personnel were admissible only against the State because the adversarial nature of a criminal
investigation made the test-results printout inherently untrustworthy and therefore outside the
exception to the hearsay rule. Those exceptions to the exception survived the combination of the
civil and criminal rules of evidence, but do not apply to license suspensions, which are civil cases. 
See Tex. R. Evid. 803(8). We also note that, while some aspects of police observations might be
rendered untrustworthy by the adversarial nature of the criminal investigation, there is no
indication of unreliability in the recording of the names of the appellant, the arresting officer, and
the intoxilyzer operator. We conclude that the ALJ did not abuse his discretion by overruling the
hearsay objection. See Department of Pub. Safety v. Mendoza, 956 S.W.2d 808, 811 (Tex.
App.--Houston [14th Dist.] 1997, no writ); Laing v. Department of Pub. Safety, 700 S.W.2d 38,
40 (Tex. App.--Fort Worth 1985, no writ).

 Finally, there was no abuse of discretion in overruling the relevance objection. 
Blankenbeker contends the printout is not relevant without evidence extrapolating his alcohol
concentration level while driving some 95 minutes before the intoxilyzer readings were taken. He
contends without extrapolation evidence, the test results would show only that he had been
drinking; because he admitted drinking, the printout would have no probative value. Evidence is
relevant if it tends to make the existence of any consequential fact more or less probable than it
is without the evidence. Tex. R. Evid. 401. The admission of one relevant exhibit does not
require the exclusion of all other evidence favoring the same conclusion. Redundance is not equal
to irrelevance. And, as discussed more fully below, the absence of extrapolation evidence does
not render the test results irrelevant. See Martin v. Department of Pub. Safety, 964 S.W.2d 772,
775-776 (Tex. App.--Austin 1998, no writ). We overrule point of error two. (5)

 By point of error one, Blankenbeker contends that there is not substantial evidence
to support the ALJ's finding that his alcohol concentration exceeded .10 grams per 210 liters of
breath while driving. He contends that the breath test taken 95 minutes after he was arrested
provided no evidence of his alcohol concentration when he was driving because there was no
evidence extrapolating from the test results what his alcohol concentration was when he was
driving. In a case with strikingly similar facts, this Court held that extrapolation evidence was not
necessary. Martin, 964 S.W.2d at 775-76. This Court wrote:


First, the breath tests administered about one and one-half hours after Martin's
arrest indicate she had an alcohol concentration of almost twice the legal limit when
the tests were administered. The officer arrested Martin and transported her to the
police station where the test was administered; presumably she had no opportunity
to imbibe further before the test. Moreover, the arresting officer testified that he
saw Martin driving recklessly by driving up on a curb and into a ditch. The officer
also testified that after he stopped her, she smelled of alcohol, her speech was
slurred, and she failed several field sobriety tests.


Martin contends this evidence is not enough to establish her alcohol concentration
at the time of the arrest. She contends the Department had the burden of providing
extrapolation evidence to connect her after-the-fact test results with her alcohol
concentration at the time of her arrest. We disagree.


* * *



The results of the breath test and the officer's observations of Martin's behavior at
the time of arrest reasonably support the inference that she had an alcohol
concentration of 0.10 when she was driving.



Id. Here, as in Martin, there was evidence in addition to the intoxilyzer test that appellant was
intoxicated while driving. His pickup changed lanes without signaling and crossed the solid
yellow shoulder stripe. At the time of arrest, his eyes were red and glassy; his breath smelled of
an alcoholic beverage and he admitted to drinking alcohol earlier in the evening; his speech was
slurred; and he performed poorly in the one-leg stand test and the walk-and-turn test, putting his
foot down during the one-leg test, failing to walk heel-to-toe in the walking test, and using his
arms for balance and swaying during both. His performance did not improve on similar tests
performed at the police station. His breath-alcohol level was lower than Martin's was in the cited
case (.190 & .194), but, at .169 and .164, well above the intoxication threshold of .10 grams per
210 liters. There was some evidence that his alcohol-concentration might have risen, dropped,
or remained the same after arrest, depending on his rate of consumption. We conclude that the
evidence of intoxication observed both at the arrest and at the police station combine with the
intoxilyzer readings to provide substantial evidence to support the proposition that appellant's
breath-alcohol level exceeded the allowable while he was driving. We overrule point of error one.

 By point of error four, appellant contends that the trial court erred by finding that
substantial evidence existed for the ALJ to find the incident occurred on November 8, 1997. The
DPS concedes that it alleged and its evidence showed the incident occurred on November 1, 1997. 
It argues that we cannot reverse, however, because appellant's substantial rights have not been
affected. Gov't Code § 2001.174(2); Department of Pub. Safety v. Cantu, 944 S.W.2d 493, 495
(Tex. App.--Houston [14th Dist.] 1997, no writ). The code states that its remedies are cumulative
of other remedies provided by statute. Gov't Code § 2001.178. The rules of appellate procedure
are statutorily authorized. See id. § 22.003(b). The rules of appellate procedure allow us to
reverse a judgment in part, modify it, render the judgment the trial court should have rendered,
and affirm it as modified. Tex. R. App. P. 43.2. The parties agree and the record undisputedly
shows that Blankenbeker's actions and the resulting arrest occurred on November 1, 1997, not
November 8, 1997. The DPS concedes the ALJ should have so found. We conclude as a matter
of law that the offense date is November 1, 1997. We sustain point of error four regarding the
incorrect date. Because judicial economy favors simply modifying the judgment in that respect,
we overrule point four insofar as he demands remand of the proceeding.


CONCLUSION


 We modify the judgment to reflect an offense date of November 1, 1997. We
affirm the judgment as modified.



 

 J. Woodfin Jones, Justice

Before Justices Jones, B. A. Smith and Yeakel

Modified and, as Modified, Affirmed

Filed: February 11, 1999

Do Not Publish  Released for publication April 1, 1999. Tex. R. App. P. 47.3(c).

1. The 1998 administrative code sections cited are unchanged from those applicable to this 1997
administrative proceeding unless otherwise noted.
2. We note that the Transportation Code also states that peace officers "shall" send the
documents to the DPS not later than the fifth business day after the date of the arrest; neither the
Transportation Code nor the SOAH rules establish a penalty for a failure to comply with this
requirement. See Tex. Transp. Code Ann. § 524.011(b) (West 1998).
3. Near the end of his discussion of point of error three, Blankenbeker asserts an error not
apparent in the text of point of error three:


In addition, it became apparent during the course of the hearing through Officer
Bomersbach's testimony that other discoverable documents existed in the
Department's file which were not produced to Appellant by the Department. ... It is
unknown at this time whether such documents might contain evidence which may be
exculpatory.


He made a similar assertion in his petition in the trial court. The only reference at the
administrative hearing is the following colloquy on cross-examination:


Q. Okay. The narrative I was furnished by DPS is about a half-page written
narrative, and I don't see any of the facts that you were referring to contained
in that narrative.


A. You must have what's on the arrest report.


Q. Okay. Did you furnish your narrative report to DPS?


A. Yes. Not me personally, but records would have.


Blankenbeker did not assert that any testimony based on this purportedly missing narrative was
erroneously admitted. There is no request to see the narrative, nor any renewed request for this
document at the administrative level. We conclude that Blankenbeker did not preserve this issue
for review by the trial court or by this Court.
4. Though the Rules of Civil Evidence were applicable to the ALJ's hearing, those rules have
since been combined with the Rules of Criminal Evidence into the Rules of Evidence. For ease,
citations will be to the Rules of Evidence unless they differ from the applicable Rule of Civil
Evidence in a way material to this civil case.
5. Blankenbeker's argument regarding the relationship between the DPS and San Marcos Police
Department fails. He argued the ALJ adopted the untenable position that DPS and SMPD were
the same agency for purposes of authenticating the records (subject of point two), but different for
purposes of discovery (subject of point three). The fact that the peace officers must send reports
to the DPS supports treating them as separate agencies for purposes of the discovery deadlines. 
See Tex. Transp. Code Ann. § 524.011 (delineating arresting officer's duties). The fact that the
records filed with the DPS are self-authenticating, and thus that the DPS custodian's certification
is sufficient without SMPD testimony, means that the records are admissible even if the DPS and
the SMPD are separate agencies. See Tex. R. Evid. 803(8) & 902(4); Department of Public Safety
v. Mendoza, 956 S.W.2d 808, 811 (Tex. App.--Houston [14th Dist.] 1997, no writ); Laing v.
Department of Public Safety, 700 S.W.2d 38,40 (Tex. App.--Fort Worth 1985, no writ). The
records are thus admissible regardless of any comment by the ALJ regarding the relationship
between the agencies.


ber 1, 1997, not
November 8, 1997. The DPS concedes the ALJ should have so found. We conclude as a matter
of law that the offense date is November 1, 1997. We sustain point of error four regarding the
incorrect date. Because judicial economy favors simply modifying the judgment in that respect,
we overrule point four insofar as he demands remand of the proceeding.


CONCLUSION


 We modify the judgment to reflect an offense date of November 1, 1997. We
affirm the judgment as modified.



 

 J. Woodfin Jones, Justice

Before Justices Jones, B. A. Smith and Yeakel

Modified and, as Modified, Affirmed

Filed: February 11, 1999

Do Not Publish  Released for publication April 1, 1999. Tex. R. App. P. 47.3(c).

1. The 1998 administrative code sections cited are unchanged from those applicable to this 1997
administrative proceeding unless otherwise noted.
2. We note that the Transportation Code also states that peace officers "shall" send the
documents to the DPS not later than the fifth business day after the date of the arrest; neither the
Transportation Code nor the SOAH rules establish a penalty for a failure to comply with this
requirement. See Tex. Transp. Code Ann. § 524.011(b) (West 1998).
3. Near the end of his discussion of point of error three, Blankenbeker asserts an error not
apparent in the text of point of error three:


In addition, it became apparent during the course of the hearing through Officer
Bomersbach's testimony that other discoverable documents existed in the
Department's file which were not produced to Appellant by the Department. ... It is
unknown at this time whether such documents might contain evidence which may be
exculpatory.


He made a similar assertion in his petition in the trial court. The only reference at the
administrative hearing is the following colloquy on cross-examination:


Q. Okay. The narrative I was furnished by DPS is about a half-page written
narrative, and I don't see any of the facts that you were referring to contained
in that narrative.


A. You must have what's on the arrest report.


Q. Okay. Did you furnish your narrative report to DPS?


A. Yes. Not me personally, but records would have.


Blankenbeker did not assert that any testimony based on this purportedly missing narrative was
erroneously admitted. There is no request to see the narrative, nor any renewed request for this
document at the administrative level. We conclude that Blankenbeker did not preserve this issue
for review by the trial court or by this Court.
4. Though the Rules of Civil Evidence were applicable to the ALJ's hearing, those rules have
since been combined with the Rules of Criminal Evidence into the Rules of Evidence. For ease,
citations will be to the Rules of Evidence unless they differ from the applicable Rule of Civil
Evidence in a way material to this civil case.
5. Blankenbeker's argument regarding the relationship between the DPS and San Marcos Police
Department fails. He argued the ALJ adopted the untenable position that DPS and SMPD were
the same agency for purposes of authenticating the records (subject of point two), but different for
purposes of discovery (subject of point three). The fact that the peace officers must send reports
to the DPS supports treating them as separate agencies for purposes of the discovery deadlines. 
See Tex. Transp. Code Ann. § 524.011 (delineating arresting officer's duties). The fact that the
records filed with the DPS are self-authenticating, and thus that the DPS custodian's certification
is sufficient without SMPD testimony, means that the records are admissible even if the DPS and
the SMPD are separate agencies. See Tex. R. Evid. 803(8) & 902(4); Department of Public Safety
v. Mendoza, 956 S.W.2d 808, 811 (Tex. App.--Houston [14th Dist.] 1997, no writ); Laing v.
Department of Public Safety, 700 S.W.2d 38,40 (Tex. App.--Fort Worth 1985, no writ). The
records are thus adm