

## ATTORNEY GENERAL OF TEXAS

### GREG ABBOTT

February 23, 2006

Mr. James R. Hine
Commissioner
Texas Department of Aging
  and Disability Services
Post Office Box 149030
Austin, Texas 78714-9030

Opinion No. GA-0403

Re: Whether an establishment that furnishes food and shelter to four or more persons who are unrelated to the proprietor and that requires those persons to obtain personal care services through the proprietor's licensed home health agency is an assisted living facility that must be licensed under section 247.021(a) of the Health and Safety Code (RQ-0381-GA)

Dear Commissioner Hine:

You inquire whether an establishment that furnishes food and shelter to four or more persons who are unrelated to the proprietor and that requires those persons to obtain personal care services through the proprietor's licensed home health agency is an assisted living facility that must be licensed under section 247.021(a) of the Health and Safety Code.[1] *See* TEX. HEALTH & SAFETY CODE ANN. § 247.021(a) (Vernon 2001).

## I.    Law and Background Facts

Section 247.021(a) states that no person may "establish or operate an assisted living facility without a license" issued under chapter 247. *Id.* The term "assisted living facility" is defined elsewhere in chapter 247 as an establishment that:

> (A)   furnishes, in one or more facilities, food and shelter to four or more persons who are unrelated to the proprietor of the establishment; and
>
> (B)   provides personal care services.

*Id.* § 247.002(1) (Vernon Supp. 2005); *see also* 40 TEX. ADMIN. CODE § 92.4 (2005) (Tex. Dep't of Aging & Disability Servs., Types of Assisted Living Facilities); *cf.* TEX. TAX CODE ANN.

---

[1]*See* Letter from Mr. James R. Hine, Commissioner, Texas Department of Aging and Disability Services, to Nancy Fuller, Chair, Opinion Committee, Office of the Attorney General (Aug. 19, 2005) (on file with the Opinion Committee, *also available at* http://www.oag.state.tx.us) [hereinafter Request Letter].

§ 11.18(k)(1) (Vernon Supp. 2005) (defining "assisted living services" to mean "responsible adult supervision of or assistance with routine living functions of an individual in instances where the individual's condition necessitates that supervision or assistance"). Chapter 247 also defines the phrase "personal care services" to mean

> (A)   assistance with meals, dressing, movement, bathing, or other personal needs or maintenance;

> (B)   the administration of medication by a person licensed to administer medication or the assistance with or supervision of medication; or

> (C)   general supervision or oversight of the physical and mental well-being of a person who needs assistance to maintain a private and independent residence in an assisted living facility or who needs assistance to manage the person's personal life, regardless of whether a guardian has been appointed for the person.

TEX. HEALTH & SAFETY CODE ANN. § 247.002(5) (Vernon Supp. 2005); *see also* 40 TEX. ADMIN. CODE § 92.3(28) (2005) (Tex. Dep't of Aging & Disability Servs., Definitions).

Your agency, the Department of Aging and Disability Services (the "Department"), enforces chapter 247, the Assisted Living Facility Licensing Act (the "Act"). *See* Request Letter, *supra* note 1, at 1; *see also* TEX. HEALTH & SAFETY CODE ANN. § 247.001 (Vernon 2001) (titling the Act). You tell us that in 2004 the Department "received a complaint concerning an establishment that is characterized by its owners as a retirement community, where more than four persons unrelated to the owner reside." Request Letter, *supra* note 2, at 2; *cf.* TEX. TAX CODE ANN. § 11.18 (Vernon Supp. 2005) (defining "retirement community" to mean "a collection of various types of housing that are under common ownership and designed for habitation by individuals over the age of 62"). You continue:

> The owner of this establishment also operates a licensed nursing facility [*see* TEX. HEALTH & SAFETY CODE ANN. § 242.301(1) (Vernon 2001) (defining "nursing facility")] at a nearby location, and is a licensed home and community support services agency . . . under Chapter 142, Health and Safety Code. The [Department] investigation revealed that, as part of the initial residential contract, residents of the retirement community must agree to the exclusive use of the owner's licensed home health agency [*see id.* § 142.001(12), (13) (Vernon Supp. 2005) (defining "home and community support services agency" and "home health services," respectively)] to provide any personal care or home health care services that may be needed by the resident. If a resident wants to obtain personal care or other home health services from any other provider, the resident would be in violation of the residential contract and would be

> required to move . . . . At least one other health care provider that attempted to enter the retirement community premises in order to provide home health services at the request of a resident was prevented by the owner or the owner's agent from providing those services to the resident.

Request Letter, *supra* note 1, at 2. You aver that your agency and its predecessor agency, the Texas Department of Human Services, have construed the statutory definition of "assisted living facility"

> to include a residential establishment if there are four or more people unrelated to the proprietor living at the location and the proprietor exercises control over who may provide personal care services at that location. While the manner of control may vary from situation to situation, if the proprietor arranges for personal care services directly or indirectly, or requires the resident to use only a provider selected by the proprietor, the proprietor is deemed to be providing the personal care services and the establishment is deemed to be an assisted living facility. In this case, the owner controls the residents' access to personal care services by requiring that any such services be provided exclusively through the owner's home health agency.

*Id.* at 3. With this scenario in mind, you ask whether the owner of a residential facility housing at least four people unrelated to the proprietor that requires those residents to obtain personal care services through a particular licensed home health agency must be licensed to operate as an assisted living facility under section 247.021(a), Health and Safety Code. *See id.*

## II.     Analysis:  First Question

You indicate that your agency's interpretation of the statute to require an establishment such as the one you describe to be licensed as an assisted living facility stems in part from a 1990 letter opinion from this office. *See id.* at 2. Letter Opinion 90-85 considers whether a "retirement center" that also provides or arranges for the provision of home health services must be licensed as an institution under chapter 242 of the Health and Safety Code. *See* Tex. Att'y Gen. LO-90-85, at 1. For purposes of chapter 242, an "institution" includes

> (A)  an establishment that:
>
> (i)   furnishes, in one or more facilities, food and shelter to four or more persons who are unrelated to the proprietor of the establishment; and
>
> (ii)  provides minor treatment under the direction and supervision of a [licensed] physician . . . , or other services that meet some need beyond the basic provision of food, shelter, and laundry.

TEX. HEALTH & SAFETY CODE ANN. § 242.002(10)(A) (Vernon 2001), *as amended by* Act of May 28, 1997, 75th Leg., R.S., ch. 1159, § 1.02, sec. 242.002(10), 1997 Tex. Gen. Laws 4363, 4364. Like personal care service providers, the home health services providers at issue in the letter opinion must be licensed under Health and Safety Code chapter 142. *See* TEX. HEALTH & SAFETY CODE ANN. § 142.002(a) (Vernon Supp. 2005); *see also* Tex. Att'y Gen. LO-90-85, at 1. Assuming that a "retirement center" is a residential facility that "furnishes . . . food and shelter to four or more persons who are unrelated to the proprietor," TEX. HEALTH & SAFETY CODE ANN. § 242.002(10)(A)(i) (Vernon 2001), *as amended by* Act of May 28, 1997, 75th Leg., R.S., ch. 1159, § 1.02, sec. 242.002(10), 1997 Tex. Gen. Laws 4363, 4364, the letter opinion notes that determining whether a retirement center is an institution that must be licensed depends upon whether providing health care "through the 'cooperation' of a licensed home health agency" is providing minor treatment or other services beyond food, shelter, and laundry for purposes of the definition of "institution." Tex. Att'y Gen. LO-90-85, at 4-5. While not expressly deciding one way or the other, the opinion states that "[w]e do not think the legislature . . . contemplated that a residential facility could escape licensure and regulation [as an institution] merely by contracting or otherwise arranging for provision of additional services, where direct provision 'in cooperation with' a home health agency of such services would have brought the facility clearly within the ambit of chapter 242." *Id.* at 6. Letter Opinion 90-85 suggests that institutions, or, by analogy, assisted living facilities, may not attempt to avoid statutory licensure requirements on mere technicalities, although it does not directly respond to the issue you raise regarding an establishment that requires residents to contract with a particular personal care services provider specified by the proprietor.

The Department has authority to interpret chapter 247. The Department is required to protect assisted living facility residents by "adopting rules relating to quality of care and quality of life," TEX. HEALTH & SAFETY CODE ANN. § 247.0011(b)(1) (Vernon 2001); by regulating assisted living facilities' operation, *see id.* § 247.0011(b)(4); and to enforce chapter 247's licensing requirements, *see, e.g., id.* §§ 247.041(a), .042(a) (Vernon Supp. 2005) (authorizing the Department to deny, suspend, or revoke a license and to suspend or close a facility in an emergency); *id.* §§ 247.043(a), .044(a) (Vernon 2001) (authorizing the Department to investigate allegations of abuse, exploitation, or neglect of a resident and to petition a district court for injunctive relief against an entity violating the licensing requirements); *id.* § 247.0451(a) (Vernon Supp. 2005) (authorizing the Department to assess an administrative penalty). Given its authority, the Department's construction of the statutory definition of "assisted living facility" to encompass establishments that "provide[] personal care services," TEX. HEALTH & SAFETY CODE ANN. § 247.002(5) (Vernon Supp. 2005) (defining "assisted living facility"), by requiring residents to purchase such services from a provider specified by the proprietor is entitled to "serious consideration" from a court if the construction does not contradict the statute's plain language and is reasonable. *Tarrant Appraisal Dist. v. Moore*, 845 S.W.2d 820, 823 (Tex. 1993); *see also* TEX. GOV'T CODE ANN. § 311.023(6) (Vernon 2005) (stating that a court construing a statute may consider "among other matters the . . . administrative construction of the statute").

The Department's interpretation is consistent with the statute's plain language. Section 247.002(1) defines "assisted living facility" to mean an establishment that "provides personal care services." TEX. HEALTH & SAFETY CODE ANN. § 247.002(1)(B) (Vernon Supp. 2005). The term

"provides" is not defined by statute or by rule, *see id.* § 247.002; 40 TEX. ADMIN. CODE § 92.3 (2005) (Tex. Dep't of Aging & Disability Servs., Definitions), and must therefore "be read in context and construed according to . . . common usage." TEX. GOV'T CODE ANN. § 311.011(a) (Vernon 1998). A 1985 Texas Supreme Court decision construing the term "provides" in the context of a statute permitting termination of parental rights if the parent failed to "provid[e] adequate support" determines that the statute did not authorize termination if a parent arranged for the child's adequate support, even if the parent did not personally support the child. *See Holick v. Smith*, 685 S.W.2d 18, 21 (Tex. 1985) (quoting TEX. FAM. CODE ANN. § 15.02(1)(C) (current version at TEX. FAM. CODE ANN. § 161.001(1)(C) (Vernon Supp. 2005)). A 1950 opinion of this office also discusses the term "provides." *See* Tex. Att'y Gen. Op. No. V-1106 (1950) at 4. The opinion states, "The usual and ordinary meaning of the verb 'provide' is 'to supply or furnish.'" *Id.* (quoting 34 WORDS & PHRASES 666 (1940)); *cf.* THE NEW OXFORD AMERICAN DICTIONARY 1372 (2001) (defining "provide" to mean "make available for use; supply").

In light of our previous construction of an analogous statute in Letter Opinion 90-85 and the common meaning of the term "provides," we conclude that the Department reasonably may construe section 247.002(1)'s definition of "assisted living facility" to include an establishment that does not itself provide personal care services but that furnishes such services by requiring its residents to contract with a personal care provider specified by the establishment proprietor. *See* TEX. HEALTH & SAFETY CODE ANN. § 247.002(1)(B) (Vernon Supp. 2005). Accordingly, an establishment that furnishes "food and shelter to four or more persons who are unrelated to the proprietor" and that furnishes personal care services by requiring its residents to contract with a particular provider is an assisted living facility under section 247.002(1) and may not operate without a license issued under section 247.021(a). *See id.* § 247.002(1), § 247.021(a) (Vernon 2001).

## III.     Analysis: Second Question

You ask second whether a licensed assisted living facility may require its residents to contract directly with personal care services providers by providing in the residents' contracts that they will exclusively use the provider with which the proprietor has a contractual arrangement. *See* TEX. HEALTH & SAFETY CODE ANN. § 247.067(c) (Vernon 2001); Request Letter, *supra* note 1, at 5. Using a ruling from the Centers for Medicare and Medicaid Services regarding federal requirements that you claim are "somewhat analogous," you reason that "the resident's right of choice is exercised at the time that the resident chooses a particular nursing facility that contracts with a particular" personal care services provider. *Id.* at 4.[2] In other words, by choosing to reside in a particular assisted living facility that requires residents to use personal care services provided only by the proprietor's health services agency, the residents are in effect exercising their right to choose under section 247.067 of the Health and Safety Code. We do not believe the Centers for Medicare and Medicaid Services' interpretation of federal law is dispositive in interpreting section 247.067.

---

[2]*See* Letter from James L. Reed, Associate Regional Administrator, Division of Medicaid, United States Department of Health & Human Services, to Ms. DeAnn Friedholm, State Medicaid Director, Texas Health and Human Services Commission (Aug. 5, 1994) (on file with the Opinion Committee).

Section 247.067 provides health care professionals with a right to provide certain services to a resident of an assisted living facility and provides residents with a right to contract for health care services. TEX. HEALTH & SAFETY CODE ANN. § 247.067 (Vernon 2001). Section 247.067(b) allows a health care professional to "provide services within the professional's scope of practice to" an assisted living facility resident at the facility. *Id.* § 247.067(b). For purposes of section 247.067(b), a "health care professional" is "an individual licensed, certified, or otherwise authorized to administer health care, for profit or otherwise, in the ordinary course of business or professional practice." *Id.* § 247.067(a). Subsection (c) endows "[a] resident of an assisted living facility" with a "right to contract with a home and community support services agency licensed under Chapter 142 or with an independent health professional for health care services." *Id.* § 247.067(c). Under chapter 142, a "home and community support services agency" includes "a person who provides . . . personal assistance services[3] for pay or other consideration in a client's residence, an independent living environment, or another appropriate agency." *Id* § 142.001(12) (Vernon Supp. 2005) (footnote added).

Preliminarily, we construe the phrase "for health care services" in section 247.067(c) to modify both "independent health professional" and "a home and community support services agency." Section 247.067 thus pertains only to a resident's right to contract for health care services, whether provided by an independent health professional or a home and community support services

---

[3]Section 142.001(22) defines "personal assistance service" to mean "routine ongoing care or services required by an individual in a residence or independent living environment that enable the individual to engage in the activities of daily living or to perform the physical functions required for independent living, including respite services." TEX. HEALTH & SAFETY CODE ANN. § 142.001(22) (Vernon Supp. 2005). The term expressly encompasses personal care, which is defined to include:

(A) bathing;

(B) dressing;

(C) grooming;

(D) feeding;

(E) exercising;

(F) toileting;

(G) positioning;

(H) assisting with self-administered medications;

(I) routine hair and skin care; and

(J) transfer or ambulation.

*Id.* § 142.001(22), (22-a).

agency. Section 247.067(c) does not affect a resident's authority to contract for personal care services that are not health care services.

To the extent that a personal care services provider is a health care professional, section 247.067(b) plainly authorizes the health care professional to provide services at the facility to an assisted living facility resident. *See id.* § 247.067(b) (Vernon 2001). Some of the tasks that are within section 247.002(5)'s definition of "personal care services" may be performed by a health care professional. *See id.* § 247.002(5) (Vernon Supp. 2005). In our opinion, section 247.067(b) prohibits the proprietor of an assisted living facility from barring a health care professional from entering the facility to treat a resident who has contracted with that professional to provide health care services, regardless of the terms of the resident's contract with the assisted living facility.

While section 247.067(c) may be read as you suggest—to permit an assisted living facility to require residents to make their choice of personal care services provider by contracting with the facility—we believe such a reading is inconsistent with other provisions of the Act. *See* TEX. HEALTH & SAFETY CODE ANN. § 247.001 (Vernon 2001 & Supp. 2005); *see also Martin v. Dep't of Public Safety*, 964 S.W.2d 772, 774 (Tex. App.—Austin 1998, no writ) (noting that a court does not "construe a statutory provision in isolation," but construes "it in the context of the statute as a whole"). Several of the Act's provisions indicate that the legislature intended to promote "resident independence and self-determination." TEX. HEALTH & SAFETY CODE ANN. § 247.011(a)(1) (Vernon 2001); *see also id.* § 247.0011(b) (requiring the Department to "protect" assisted living facility residents by "promoting policies that maximize" residents' "dignity, autonomy, privacy, and independence"); *id.* § 247.064(b)(7) (requiring assisted living facilities to recognize, by posting a residents' bill of rights, that each resident "has the right to . . . unrestricted communication, including personal visitation with any person of the resident's choice, at any reasonable hour"). We have also examined the legislative history of section 247.067(c), which was adopted in 1999, and find it consistent with our construction. *See* Act of May 11, 1999, 76th Leg., R.S., ch. 233, § 1, sec. 247.067(c), 1999 Tex. Gen. Laws 1064, 1076-77. In introducing the amendment that proposed to add subsection (c) before the House Committee on Public Health, Representative Harvey Hilderbran averred that, though much of the bill was intended to regulate the level of care that an assisted living facility could provide, subsection (c) was intended to make clear that the bill was not intended to regulate a resident's right to bring in a home and community support services agency. *See Assisted Living Facility Licensing Act: Hearings on S.B. 93 Before the House Comm. on Public Health*, 76th Leg., R.S. (Apr. 14, 1999) (statement of Representative Hilderbran) (tape available from House Video/Audio Services).

We consequently conclude that an assisted living facility proprietor may not restrict a resident's right to contract with a personal care services provider for health care services by requiring the resident to use only the provider that the assisted living facility has specified. TEX. HEALTH & SAFETY CODE ANN. § 247.067(c) (Vernon 2001); *see Ex parte Kubas*, 83 S.W.3d 366, 369 (Tex. App.—Corpus Christi 2002, pet. ref'd) (quoting *Tex. Water Rights Comm'n v. Write*, 464 S.W.2d 642, 648 (Tex. 1971) (quoting *Mellinger v. City of Houston*, 3 S.W. 249, 253 (Tex. 1887))) (defining the term "right" as "'a claim . . . secured by law'"). An assisted living facility proprietor who restricts a resident's right to contract with a personal care services provider for health care services

or who bars health care professionals with whom residents have contracted violates chapter 247's requirements. The Department may suspend or revoke an assisted living facility license for a violation of chapter 247. *See* TEX. HEALTH & SAFETY CODE ANN. § 247.041(a) (Vernon Supp. 2005). The Department also may determine that additional enforcement actions may be taken. *See, e.g., id.* §§ 247.042 ("Emergency Suspension or Closing Order"), .043(b) ("Investigation of Abuse, Exploitation, or Neglect"), § 247.045 (Vernon 2001) ("Civil Penalties"). *See generally* 40 TEX. ADMIN. CODE ch. 92, subch. H (2005) (Tex. Dep't of Aging & Disability Servs., Enforcement).

## IV.    Analysis:  Third Question

You ask third whether a licensed assisted living facility may enforce its contract with the resident regarding the choice of personal care service provider by terminating the residential contract. *See* Request Letter, *supra* note 1, at 5. To the extent the contract pertains to the provision of non-health care services, the facility may enforce it. To the extent the contract purports to cover the provision of services by health care professionals or of health care services by a home and community support services agency, the facility may not enforce it.

## S U M M A R Y

An establishment, including one characterized as a retirement community, that furnishes food and shelter to four or more persons who are unrelated to the proprietor and that requires those persons to obtain personal care services through the proprietor's licensed home health agency is an assisted living facility that must be licensed under section 247.021(a) of the Health and Safety Code. An assisted living facility may not require its residents to use a particular personal care services provider to the extent the services are provided by a health care professional, as defined by section 247.067(a) of the Health and Safety Code. Nor may an assisted living facility restrict its residents' rights to contract for health care services with personal care services providers, although a facility may restrict residents' authority to contract with personal care services providers for services other than health care. To the extent an assisted living facility's contract with its residents requires the residents to obtain non-health care personal care services from a specified provider, the facility may enforce the contract.

Very truly yours,

GREG ABBOTT
Attorney General of Texas

BARRY R. MCBEE
First Assistant Attorney General

ELLEN L. WITT
Deputy Attorney General for Legal Counsel

NANCY S. FULLER
Chair, Opinion Committee

Kymberly K. Oltrogge
Assistant Attorney General, Opinion Committee