TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-96-00533-CV






Texas Department of Public Safety, Appellant



v.



Janice Johnson Rodriguez, Appellee






FROM THE COUNTY COURT AT LAW NO. 2 OF TRAVIS COUNTY


NO. 230,216, HONORABLE J. DAVID PHILLIPS, JUDGE PRESIDING






 The appellant, the Texas Department of Public Safety (the Department), appeals from a
trial-court judgment overturning the suspension of the driver's license of the appellee, Janice Johnson
Rodriguez. We will affirm the trial court's judgment.


BACKGROUND


 Rodriguez's license was suspended pursuant to a provision of the Administrative License
Revocation statute. See Tex. Transp. Code Ann. § 724.035 (West 1997) (if a person refuses the request
of a peace officer to submit to the taking of a specimen, the Department shall suspend the person's driver's
license for 90 days). The Transportation Code provides that, upon being served with notice of the license
suspension, the person who receives notice may request a hearing. Tex. Transp. Code Ann. § 724.041
(West 1997). Rodriguez requested such a hearing. The hearing was held on February 9, 1996. The
Department decided to meet its burden of proof at the hearing with an affidavit of the arresting officer,
Timothy L. Gautier. The Department chose to use this documentary proof rather than having officer
Gautier appear as a live witness. (1)

 According to the affidavit, on January 1, 1996, Officer Gautier stopped Rodriguez for
speeding. Rodriguez was traveling on Interstate 35 in a 1984 Blue Nissan Sentra going sixty-four in a fifty-five mile per hour zone. The affidavit notes that at some subsequent point in time Officer Gautier observed
Rodriguez while she performed three field sobriety tests: the horizontal gaze nystagmus (HGN), the walk-and-turn test, and the one-leg-stand test. The HGN showed a jerking of the eyes at a maximum deviation
that was "apparent prior to forty-five degrees." During the HGN test, Rodriguez "had difficulty following
smoothly" and officer Gautier noted that she had glassy and bloodshot eyes. During the walk-and-turn test,
Rodriguez staggered, used her arms for balance, and could not walk from heel to toe as instructed. After
being instructed how to perform the one-leg-stand test, Rodriguez "began test early" and put her foot down
prematurely.

 Gautier then arrested Rodriguez for the offense of driving while intoxicated. Following her
arrest, Rodriguez was asked to take the breath-alcohol-concentration test (breath test) and refused. 
Following Gautier's report of Rodriguez's refusal to give a breath specimen, the Department issued a notice
of suspension of Rodriguez's driver's license in accordance with section 724.033 of the Texas
Transportation Code. At Rodriguez's request, a hearing to contest the suspension was held.

 The administrative law judge (ALJ) concluded by a preponderance of the evidence that
Rodriguez's license should be suspended. Rodriguez appealed the order of the ALJ to the Travis County
Court at Law No. 2 arguing that the ALJ erred because: (1) the arresting officer lacked reasonable
suspicion and probable cause to stop Rodriguez for field sobriety tests; (2) the officer failed to inform
Rodriguez that the prohibited alcohol concentration is .10 or more; (3) the police gave Rodriguez incorrect
and misleading information before being asked to provide a specimen of her breath; (4) the "Probable
Cause Affidavit" was erroneously admitted over several objections; (2) and (5) portions of the "Probable
Cause Affidavit" were erroneously admitted over an objection that the affiant's use of third-person passive
voice rather than first-person active voice indicated that the affidavit lacked personal knowledge and that
the Department failed to present sufficient evidence to show that the affiant possessed that personal
knowledge.

 The county court at law reversed the ALJ's decision because it was not supported by
substantial evidence. In particular, the trial court noted that the affidavit of Officer Gautier did not state the
basis for his purported knowledge of the facts and relied too heavily on legal conclusions. The Department
appeals the judgment of the county court at law.


DISCUSSION


 To suspend a driver's license for refusing to take a breath test, the DPS must show that
(1) the officer had reasonable suspicion or probable cause to stop or arrest the motorist; (2) the officer had
probable cause to believe that the person was operating the motor vehicle while intoxicated; (3) the person
was placed under arrest by the officer and was requested to give a specimen; and (4) the person refused
to give a specimen. Tex. Transp. Code Ann. § 724.042 (West 1997). This statute requires evidence of
probable cause to initially stop the motorist as well as probable cause to detain the motorist further in order
to investigate whether the motorist was driving while intoxicated.

 The affidavit that represented all of the evidence at the administrative hearing provided
sufficient evidence of probable cause to stop Rodriguez's automobile. Rodriguez was speeding, sixty-four
miles per hour in a fifty-five mile per hour zone. This is not contested by the parties. There is, however,
a fatal gap in the evidence concerning the probable cause Officer Gautier had to detain Rodriguez in order
to investigate whether she was driving while intoxicated. The evidence in the record is completely silent
on any causal connection between the initial stop and the subsequent field sobriety tests. Thus, while the
first stop was justified because Rodriguez was speeding, the second "stop" (detaining Rodriguez to perform
the field sobriety tests) was not. The United States Supreme Court has held that law enforcement officers
can make a stop only if they are aware of "specific and articulable facts which, taken together with rational
inferences from those facts, reasonably warrant" such an intrusion. Terry v. Ohio, 392 U.S. 1, 21 (1968). 
That Court has also held that the scope and duration of a stop are limited by its underlying justification:


The scope of the detention must be carefully tailored to its underlying justification. . . . 
[A]n investigative detention must be temporary and last no longer than is necessary to
effectuate the purpose of the stop. Similarly, the investigative methods employed should
be the least intrusive means reasonably available to verify or dispel the officer's suspicion
in a short period of time.



Florida v. Royer, 460 U.S. 491, 500 (1983). Here the justified "stop" was in regard to Rodriguez's
speeding violation. Absent additional evidence, there was no justification for any "stop" that exceeded what
was necessary to ticket Rodriguez for speeding.

 Texas courts have adopted the same language and couched it in terms of intrusions on
personal freedoms:


To determine whether an officer was justified in making such an intrusion upon the freedom
of the person detained, the court must find that the officer, in light of his experience and
general knowledge, "had specific and articulable facts which taken together with rational
inferences from those facts would reasonably warrant the intrusion on the freedom of the
person stopped for further investigation."



Townsend v. State, 813 S.W.2d 181, 185 (Tex. App.--Houston [14th Dist.] 1991, pet. ref'd) (quoting
Hernandez v. State, 523 S.W.2d 410, 411 (Tex. Crim. App. 1975)). Additionally, the court of criminal
appeals has stated:


There must be a reasonable suspicion by the officer that some activity out of the ordinary
is occurring or had occured, some suggestion to connect the detained person with the
unusual activity, and some indication that the activity is related to a crime.



Johnson v. State, 658 S.W.2d 623, 626 (Tex. Crim. App. 1983).

 In the present case, the administrative record contains no evidence indicating that Officer
Gautier had probable cause to administer field sobriety tests to Rodriguez. In case after case, Texas courts
have required some causal link (usually in the form of testimony from the arresting officer) between the
probable cause for the stop of the vehicle and the subsequent probable cause to arrest the motorist without
a warrant for the offense of driving while intoxicated. See, e.g., Hooker v. State, 932 S.W.2d 712, 714
(Tex. App.--Beaumont 1996, no pet.) (driver appeared sluggish, disoriented, and slow to respond to
questions and to find driver's license); Trent v. State, 925 S.W.2d 130, 134 (Tex. App.--Waco 1996,
no pet.) (appeared drunk, smelled of alcohol, and was belligerent); Raffaelli v. State, 881 S.W.2d 714,
715 (Tex. App.--Texarkana 1994, pet. ref'd) (after speeding stop, officer noticed slurred speech and
staggering); Espericueta v. State, 838 S.W.2d 880, 881 (Tex. App.--Corpus Christi 1992, no pet.)
(officer smelled alcohol on breath); Townsend, 813 S.W.2d at 185 (officer noticed that motorist's eyes
were glassy and there was a strong odor of alcohol on his breath); Gillentine v. State, 781 S.W.2d 382,
383 (Tex. App.--Houston [1st Dist.] 1989, no pet.) (after speeding stop, officer noticed strong odor of
alcohol and inability to maintain balance).

 In a case that presents a similar fact situation, the El Paso Court of Appeals held that, given
the lack of probable cause to arrest a motorist for driving while intoxicated, the trial court was within its
discretion to suppress the evidence related to the driving-while-intoxicated arrest. State v. Hopper, 842
S.W.2d 817, 821 (Tex. App.--El Paso 1992, no pet.). The Hopper court stated that there was "nothing
specific in the record which provides any basis upon which the trial court could reasonably determine that
the officers had probable cause to effect the arrest." Id.

 Another Texas case, Highwarden v. State, 846 S.W.2d 479 (Tex. App.-- Houston [14th
Dist.] 1993), pet. dism'd, 871 S.W.2d 726 (Tex. Crim. App. 1994), suggests that a record consisting of
evidence of a traffic violation stop and subsequent field sobriety tests could be objectionable as not showing
probable cause: "[t]his same evidence may be insufficient to support a finding of probable cause," but the
conclusory nature of this evidence was not objected to at trial. Id. at 482.

 Similarly, in our case, the affidavit from the arresting officer is completely silent regarding
any causal link between the stop of Rodriguez and the subsequent field sobriety tests. Because the
Department must show probable cause to conduct field sobriety tests and thereby effect an arrest for
driving while intoxicated, Officer Gautier's affidavit is fatally defective. Unfortunately, because there was
no live testimony from the officer, there is no way to overcome this defect. We, therefore, overrule the
Department's points of error.


CONCLUSION


 Because we find there to be a significant substantive defect in the affidavit that represents
all of the evidence in this proceeding, we affirm the judgment of the trial court.



 

 Mack Kidd, Justice

Before Justices Powers, Jones and Kidd

Affirmed

Filed: July 3, 1997

Publish

1. We express no opinion regarding the propriety of the fact that the Department has attempted to make
its entire case on written documentary proof.
2. Specifically, Rodriguez objected to the affidavit on the grounds that it was (1) hearsay; (2) outside
the public records exception of Rule 803(8) because it was prepared in an adversarial context for use in
litigation and therefore "the sources of information or other circumstances indicate lack of trustworthiness";
and (3) barred by the "Palmer Doctrine" established by the United States Supreme Court. See Palmer
v. Hoffman, 318 U.S. 109 (1943).


case, the administrative record contains no evidence indicating that Officer
Gautier had probable cause to administer field sobriety tests to Rodriguez. In case after case, Texas courts
have required some causal link (usually in the form of testimony from the arresting officer) between the
probable cause for the stop of the vehicle and the subsequent probable cause to arrest the motorist without
a warrant for the offense of driving while intoxicated. See, e.g., Hooker v. State, 932 S.W.2d 712, 714
(Tex. App.--Beaumont 1996, no pet.) (driver appeared sluggish, disoriented, and slow to respond to
questions and to find driver's license); Trent v. State, 925 S.W.2d 130, 134 (Tex. App.--Waco 1996,
no pet.) (appeared drunk, smelled of alcohol, and was belligerent); Raffaelli v. State, 881 S.W.2d 714,
715 (Tex. App.--Texarkana 1994, pet. ref'd) (after speeding stop, officer noticed slurred speech and
staggering); Espericueta v. State, 838 S.W.2d 880, 881 (Tex. App.--Corpus Christi 1992, no pet.)
(officer smelled alcohol on breath); Townsend, 813 S.W.2d at 185 (officer noticed that motorist's eyes
were glassy and there was a strong odor of alcohol on his breath); Gillentine v. State, 781 S.W.2d 382,
383 (Tex. App.--Houston [1st Dist.] 1989, no pet.) (after speeding stop, officer noticed strong odor of
alcohol and inability to maintain balance).

 In a case that presents a similar fact situation, the El Paso Court of Appeals held that, given
the lack of probable cause to arrest a motorist for driving while intoxicated, the trial court was within its
discretion to suppress the evidence related to the driving-while-intoxicated arrest. State v. Hopper, 842
S.W.2d 817, 821 (Tex. App.--El Paso 1992, no pet.). The Hopper court stated that there was "nothing
specific in the record which provides any basis upon which the trial court could reasonably determine that
the officers had probable cause to effect the arrest." Id.

 Another Texas case, Highwarden v. State, 846 S.W.2d 479 (Tex. App.-- Houston [14th
Dist.] 1993), pet. dism'd, 871 S.W.2d 726 (Tex. Crim. App. 1994), suggests that a record consisting of
evidence of a traffic violation stop and subsequent field sobriety tests could be objectionable as not showing
probable cause: "[t]his same evidence may be insufficient to support a finding of probable cause," but the
conclusory nature of this evidence was not objected to at trial. Id. at 482.

 Similarly, in our case, the affidavit from the arresting officer is completely silent regarding
any causal link between the stop of Rodriguez and the subsequent field sobriety tests. Because the
Department must show probable cause to conduct field sobriety tests and thereby effect an arrest for
driving while intoxicated, Officer Gautier's affidavit is fatally defective. Unfortunately, because there was
no live testimony from the officer, there is no way to overcome this defect. We, therefore, overrule the
Department's points of error.


CONCLUSION


 Because we find there to be a significant substantive defect in the affidavit that represents
all of the evidence in this proceeding, we affirm the judgment of the trial court.



 

 Mack Kidd, Justice

Before Justices Powers, Jones and Kidd

Affirmed

Filed: July 3, 1997

Publish

1. We express no opinion regarding the propriety of the fact that the Department has attempted to make
its entire case on written documentary proof.