Robert Edgar BLANKENBEKER,
Appellant,

v.

TEXAS DEPARTMENT OF PUBLIC
SAFETY, Appellee.

No. 03–98–00195–CV.

Court of Appeals of Texas,
Austin.

Feb. 11, 1999.

Released for Publication April 1, 1999.

Brenda Freeman, New Braunfels, for appellant.

Kevin M. Givens, Texas Dept. of Public Safety Supervising Atty., ALR Appeals, Austin, for appellee.

Before Justices JONES, B.A. SMITH and YEAKEL.

J. WOODFIN JONES, Justice.

Robert Edgar Blankenbeker appeals from the trial court's affirmance of the administrative law judge's (ALJ) decision to sustain the suspension of his driver's license for driving with an illegal alcohol-concentration level. Appellant contends the trial court should have reversed the ALJ's decision sustaining the suspension because the ALJ improperly admitted evidence and because the ALJ's final decision was not supported by substantial evidence. We will modify the judgment and affirm it as modified.

## BACKGROUND

Appellant was arrested on November 1, 1997 for driving while intoxicated. An offi-

cer from the San Marcos Police Department (SMPD) stopped him after observing erratic driving. He was arrested after performing poorly on field sobriety tests. Ninety-five minutes later, he provided breath specimens to the SMPD. The specimens revealed that appellant had .169 and .164 grams of alcohol per 210 liters of breath—above the intoxication threshold of .10 grams. The SMPD served a license suspension notice. Appellant challenged the suspension, but the ALJ upheld it. Appellant requested review in the trial court, which affirmed the suspension.

## DISCUSSION

Different standards of review apply to different determinations on reviews of administrative rulings. Tex. Gov't Code Ann. § 2001.174 (West 1998). Courts review *de novo* interpretations of constitutional or statutory provisions. Gov't Code § 2001.174(2)(B); *see also In re Humphreys*, 880 S.W.2d 402, 404 (Tex.1994). Courts can reverse decisions for abuses of discretion. Gov't Code § 2001.174(2)(F). Finally, courts can reverse decisions not supported by substantial evidence. Gov't Code § 2001.174(2)(E). These errors are reversible only if they prejudice substantial rights of the appellant. *Id.*

Appellant raises four points of error. By his second and third points, he complains of the ALJ's admission of evidence. He contends the ALJ should have excluded the police reports, the statutory warnings sheet (DIC–24), and his intoxilyzer test-results printout because they were not provided to him as promptly as State Office of Administrative Hearings (SOAH) rules require. *See* 1 Tex. Admin. Code 159.13(1) (1998).[1] He also contends that his intoxilyzer test-results printout should not have been admitted because of various problems with its nature and the predicate laid for it. By his first and fourth points, he argues that the record lacks substantial evidence to support the ALJ's findings

---

1. The 1998 administrative code sections cited are unchanged from those applicable to this 1997 administrative proceeding unless otherwise noted.

that his breath-alcohol level was impermissibly high and that he committed the offense on November 8, 1997.

■ The admissibility of the intoxilyzer test results is critical. Unlike the penal offense of driving while intoxicated, for which intoxication can be proved either by diminished faculties or impermissibly high alcohol concentration, license suspension is predicated entirely on an impermissible alcohol concentration level. *Compare* Tex. Penal Code Ann. §§ 49.01(2) & 49.04 (West 1994) (DWI) *with* Tex. Transp. Code Ann. § 524.012 (West 1998) (license suspension).

We review administrative rulings on the admissibility of evidence under the same abuse of discretion standard we apply to trial courts. *See City of Amarillo v. Railroad Comm'n*, 894 S.W.2d 491, 495 (Tex. App.—Austin 1995, writ denied). A court abuses its discretion if it acts arbitrarily or unreasonably, or without reference to guiding rules and principles. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex.1985).

■ Blankenbeker contends three exhibits admitted into evidence were not provided to him timely. He complains of the admission of Exhibit 1 (police report), Exhibit 2 (DIC–24 form statutory warnings), and Exhibit 4 (the breath-test result slip). He complains that the documents were produced too long after his request and too short a time before the hearing.

If a party requests production of a document contained in the DPS's files, the DPS must produce it within five days of the DPS's receipt of the request; the DPS cannot introduce into evidence a document "that has not been made available by the department to the defendant pursuant to request." 1 Tex. Admin. Code § 159.13(1) (1998). Any request for documents not in the department's possession

shall be denied by the ALJ. *Id.* The DPS received Blankenbeker's request for Exhibits 1, 2, and 4 on November 12, 1997. The DPS, however, did not receive the documents from the SMPD until November 21, 1997.[2] The DPS did not send the documents to Blankenbeker until 4:37 p.m. on December 1, 1997.

Resolution of the objection that the documents were not produced within five days of the request requires defining whether non-working days are included. The SOAH rule regarding computation of time, like the rule of civil procedure then effective, provides that, when computing timetables of five days or less, neither the day of the event nor weekend days and legal holidays count in the period. *Compare* 22 Tex. Reg. 12740 (1997) (amending 1 Tex. Admin. Code § 155.19*) with* Tex.R. Civ. P. 4. This amendment of section 155.19 was not effective until January 2, 1998, a month after the ALJ's hearing; before the amendment, section 155.19 dealt with replacing ALJs, and there was no section dealing with time computation. *Compare* 22 Tex. Reg. 12740 (1997) *with* 1 Tex. Admin. Code § 155.19 (1998). Whether a special counting rule applies to five-day periods is critical because DPS did not produce the documents until ten calendar days after receiving them.

We conclude the trial court did not err by failing to overturn the ALJ's admission of the evidence. We are mindful that an agency's interpretation of its own rules is entitled to deference by the courts. *See Public Util. Comm'n v. Gulf States Utils. Co.*, 809 S.W.2d 201, 207 (Tex.1991); *Texas Citrus Exch. v. Sharp*, 955 S.W.2d 164, 169 (Tex.App.—Austin 1997, no pet.). The absence of a SOAH time-computation rule, the contemporaneous existence of the civil procedure rule's special five-day provision, and the consonance of that rule and the current SOAH rule persuade us that the

---

**2.** We note that the Transportation Code also states that peace officers "shall" send the documents to the DPS not later than the fifth business day after the date of the arrest; neither the Transportation Code nor the SOAH rules establish a penalty for a failure to comply with this requirement. *See* Tex. Transp. Code Ann. § 524.011(b) (West 1998).

ALJ did not abuse his discretion by applying the special five-working-day rule. The DPS received the documents on November 21, 1997, a Friday. The fifth calendar day after that was November 26, 1997. The ALJ's admission of the documents, received on December 1, 1997, underscores that he applied the special short-term rules. Under the five-working-day rule, the first day that counted was Monday, November 24. The next two days counted, but the following four did not—November 27–28 were legal holidays for Thanksgiving, and November 29–30 were weekend days. The date of filing, Monday, December 1, 1997, was therefore only the fourth working day after the DPS had the documents in its files. We conclude that the ALJ did not abuse his discretion by finding that the DPS produced the document within five days of the date production was possible.

■ Nor did the ALJ abuse his discretion by concluding that the DPS produced the documents long enough before the hearing. The SOAH rule itself is somewhat confusing. It provides:

> To be offered in a telephone hearing, tangible/documentary evidence must be marked and filed with the office and all parties *at least five days prior to the scheduled hearing*, but in no event later than two days prior to the scheduled hearing, unless otherwise agreed by the parties.

1 Tex. Admin. Code § 159.25(c) (1998) (emphasis added). The language immediately after the italicized phrase arguably makes the five-day period in the italicized phrase surplusage. The DPS faxed the documents on December 1, 1997, two days before the hearing on December 3, 1997. We overrule point three.[3]

■ By point of error two, Blankenbeker complains of the admission of Exhibit 4, the test-results printout produced by the intoxilyzer. He complains that the printout was not properly authenticated, was hearsay, and was irrelevant.

There was no abuse of discretion in finding the authentication sufficient. Blankenbeker complains that, because SMPD administered the test and produced the printout, SMPD authentication is required. He cites us to no authority requiring SMPD testimony for a record from DPS files. Rule of Evidence 902(4) provides that

> [e]xtrinsic evidence of authenticity as a condition precedent to admissibility is not required with respect to . . . [a] copy of an official record or report or entry therein, or of a document authorized by law to be recorded or filed and actually recorded or filed in a public office . . . by certificate complying with paragraph (1) . . . of this rule.

An officer arresting a person for DWI must send to the DPS a report identifying the arrested person and giving the analysis of the specimen. *See* Tex. Transp.

**3.** Near the end of his discussion of point of error three, Blankenbeker asserts an error not apparent in the text of point of error three:

> In addition, it became apparent during the course of the hearing through Officer Bomersbach's testimony that other discoverable documents existed in the Department's file which were not produced to Appellant by the Department. . . . It is unknown at this time whether such documents might contain evidence which may be exculpatory.

He made a similar assertion in his petition in the trial court. The only reference at the administrative hearing is the following colloquy on cross-examination:

> Q. Okay. The narrative I was furnished by DPS is about a half-page written narra-

tive, and I don't see any of the facts that you were referring to contained in that narrative.
> A. You must have what's on the arrest report.
> Q. Okay. Did you furnish your narrative report to DPS?
> A. Yes. Not me personally, but records would have.

Blankenbeker did not assert that any testimony based on this purportedly missing narrative was erroneously admitted. There is no request to see the narrative, nor any renewed request for this document at the administrative level. We conclude that Blankenbeker did not preserve this issue for review by the trial court or by this Court.

Code Ann. § 524.011(b) (West 1998). Though created by SMPD, the test-results printout was filed with DPS in compliance with this statute. It is a DPS record. The copy of the printout is stamped with the DPS seal and signed with an attestation that the printout is contained in DPS files, satisfying Rule 902.

■ There was no abuse of discretion in overruling the hearsay objection. Blankenbeker complains that the printout contains hearsay statements of his name and birth date, and the names of the arresting officer and the intoxilyzer operator. But public records are excepted from the hearsay exclusion if they set forth fact-findings resulting from an investigation made pursuant to authority granted by law or if they set forth matters observed pursuant to legal duty regarding matters about which there was a duty to report. Tex.R. Evid. 803(8).[4] Blankenbeker argues that, under the former criminal rules of evidence, reports by police officers and law enforcement personnel were admissible only against the State because the adversarial nature of a criminal investigation made the test-results printout inherently untrustworthy and therefore outside the exception to the hearsay rule. Those exceptions to the exception survived the combination of the civil and criminal rules of evidence, but do not apply to license suspensions, which are civil cases. *See* Tex.R. Evid. 803(8). We also note that, while some aspects of police observations might be rendered untrustworthy by the adversarial nature of the criminal investigation, there is no indication of unreliability in the recording of the names of the appellant, the arresting officer, and the intoxilyzer operator. We conclude that the ALJ did not abuse his discretion by overruling the hearsay objection. *See Department of Pub. Safety v. Mendoza,* 956 S.W.2d 808, 811 (Tex.App.—Houston [14th Dist.] 1997, no writ); *Laing v. Department of Pub. Safety,* 700 S.W.2d 38, 40 (Tex.App.—Fort Worth 1985, no writ).

■ Finally, there was no abuse of discretion in overruling the relevance objection. Blankenbeker contends the printout is not relevant without evidence extrapolating his alcohol concentration level while driving some 95 minutes before the intoxilyzer readings were taken. He contends without extrapolation evidence, the test results would show only that he had been drinking; because he admitted drinking, the printout would have no probative value. Evidence is relevant if it tends to make the existence of any consequential fact more or less probable than it is without the evidence. Tex.R. Evid. 401. The admission of one relevant exhibit does not require the exclusion of all other evidence favoring the same conclusion. Redundance is not equal to irrelevance. And, as discussed more fully below, the absence of extrapolation evidence does not render the test results irrelevant. *See Martin v. Department of Pub. Safety,* 964 S.W.2d 772, 775–776 (Tex.App.—Austin 1998, no writ). We overrule point of error two.[5]

4. Though the Rules of Civil Evidence were applicable to the ALJ's hearing, those rules have since been combined with the Rules of Criminal Evidence into the Rules of Evidence. For ease, citations will be to the Rules of Evidence unless they differ from the applicable Rule of Civil Evidence in a way material to this civil case.

5. Blankenbeker's argument regarding the relationship between the DPS and San Marcos Police Department fails. He argued the ALJ adopted the untenable position that DPS and SMPD were the same agency for purposes of authenticating the records (subject of point two), but different for purposes of discovery (subject of point three). The fact that the peace officers must send reports to the DPS supports treating them as separate agencies for purposes of the discovery deadlines. *See* Tex. Transp. Code Ann. § 524.011 (delineating arresting officer's duties). The fact that the records filed with the DPS are self-authenticating, and thus that the DPS custodian's certification is sufficient without SMPD testimony, means that the records are admissible even if the DPS and the SMPD are separate agencies. *See* Tex.R. Evid. 803(8) & 902(4); *Department of Public Safety v. Mendoza,* 956 S.W.2d 808, 811 (Tex.App.—Houston [14th Dist.] 1997, no writ); *Laing v. Department of Public Safety,* 700 S.W.2d 38,40 (Tex.

By point of error one, Blankenbeker contends that there is not substantial evidence to support the ALJ's finding that his alcohol concentration exceeded .10 grams per 210 liters of breath while driving. He contends that the breath test taken 95 minutes after he was arrested provided no evidence of his alcohol concentration when he was driving because there was no evidence extrapolating from the test results what his alcohol concentration was when he was driving. In a case with strikingly similar facts, this Court held that extrapolation evidence was not necessary. *Martin*, 964 S.W.2d at 775–76. This Court wrote:

> First, the breath tests administered about one and one-half hours after Martin's arrest indicate she had an alcohol concentration of almost twice the legal limit when the tests were administered. The officer arrested Martin and transported her to the police station where the test was administered; presumably she had no opportunity to imbibe further before the test. Moreover, the arresting officer testified that he saw Martin driving recklessly by driving up on a curb and into a ditch. The officer also testified that after he stopped her, she smelled of alcohol, her speech was slurred, and she failed several field sobriety tests.
>
> Martin contends this evidence is not enough to establish her alcohol concentration at the time of the arrest. She contends the Department had the burden of providing extrapolation evidence to connect her after-the-fact test results with her alcohol concentration at the time of her arrest. We disagree.

> \* \* \*

> The results of the breath test and the officer's observations of Martin's behavior at the time of arrest reasonably support the inference that she had an alcohol concentration of 0.10 when she was driving.

*Id.* Here, as in *Martin*, there was evidence in addition to the intoxilyzer test that appellant was intoxicated while driving. His pickup changed lanes without signaling and crossed the solid yellow shoulder stripe. At the time of arrest, his eyes were red and glassy; his breath smelled of an alcoholic beverage and he admitted to drinking alcohol earlier in the evening; his speech was slurred; and he performed poorly in the one-leg stand test and the walk-and-turn test, putting his foot down during the one-leg test, failing to walk heel-to-toe in the walking test, and using his arms for balance and swaying during both. His performance did not improve on similar tests performed at the police station. His breath-alcohol level was lower than Martin's was in the cited case (.190 & .194), but, at .169 and .164, well above the intoxication threshold of .10 grams per 210 liters. There was some evidence that his alcohol-concentration might have risen, dropped, or remained the same after arrest, depending on his rate of consumption. We conclude that the evidence of intoxication observed both at the arrest and at the police station combine with the intoxilyzer readings to provide substantial evidence to support the proposition that appellant's breath-alcohol level exceeded the allowable while he was driving. We overrule point of error one.

By point of error four, appellant contends that the trial court erred by finding that substantial evidence existed for the ALJ to find the incident occurred on November 8, 1997. The DPS concedes that it alleged and its evidence showed the incident occurred on November 1, 1997. It argues that we cannot reverse, however, because appellant's substantial rights have not been affected. Gov't Code § 2001.174(2); *Department of Pub. Safety v. Cantu*, 944 S.W.2d 493, 495 (Tex.App.—Houston [14th Dist.] 1997, no writ). The

App.—Fort Worth 1985, no writ). The records are thus admissible regardless of any

comment by the ALJ regarding the relationship between the agencies.

code states that its remedies are cumulative of other remedies provided by statute. Gov't Code § 2001.178. The rules of appellate procedure are statutorily authorized. *See id.* § 22.003(b). The rules of appellate procedure allow us to reverse a judgment in part, modify it, render the judgment the trial court should have rendered, and affirm it as modified. Tex.R.App. P. 43.2. The parties agree and the record undisputedly shows that Blankenbeker's actions and the resulting arrest occurred on November 1, 1997, not November 8, 1997. The DPS concedes the ALJ should have so found. We conclude as a matter of law that the offense date is November 1, 1997. We sustain point of error four regarding the incorrect date. Because judicial economy favors simply modifying the judgment in that respect, we overrule point four insofar as he demands remand of the proceeding.

### CONCLUSION

We modify the judgment to reflect an offense date of November 1, 1997. We affirm the judgment as modified.