# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-00-00553-CV

**Texas Department of Public Safety, Appellant**

**v.**

**Penn Alfonso Jenkins, Appellee**

### FROM THE COUNTY COURT AT LAW NO. 1 OF HAYS COUNTY
### NO. 6302-C, HONORABLE LINDA A. RODRIGUEZ, JUDGE PRESIDING

The Texas Department of Public Safety ("DPS") appeals the county court at law's reversal of a DPS administrative order authorizing DPS to suspend the driver's license of Penn Alfonso Jenkins for ninety days when he refused to provide a breath specimen following his arrest for driving while intoxicated. *See* Tex. Transp. Code Ann. §§ 724.031-.035 (West 1999 & Supp. 2001). We will reverse the trial court's judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

On October 29, 1999, DPS Trooper A.J. Wolpman stopped appellee Penn Alfonso Jenkins ("appellee" or "Jenkins") on suspicion of driving while intoxicated ("DWI") after Wolpman saw Jenkins weave within his lane of traffic on IH-35 and repeatedly vary his speed from approximately forty miles per hour to sixty miles per hour in a sixty-five mile-per-hour speed zone. Wolpman stopped Jenkins and administered three field sobriety tests. Based on Wolpman's observations of Jenkins and Jenkins's failure to successfully perform the three tests, Wolpman

arrested Jenkins for DWI and requested a breath or blood specimen for an intoxication test. Jenkins refused, resulting in the ninety-day suspension of his driver's license. *See id.* § 724.035(a)(1).

Jenkins requested a hearing to contest the driver's license suspension. *See id.* § 724.041. Wolpman did not appear to testify at the hearing, but DPS presented two exhibits—a sworn report by Wolpman and a "supplemental probable cause affidavit."[1] On the sworn report, Wolpman stated that his reasonable suspicion to stop Jenkins was based on his observations of Jenkins "[w]eaving in outside lane of traffic" and Jenkins's vehicle "[s]lowing down from 60 MPH to 40 MPH in a 65 MPH zone. Subject did this several times." The supplemental probable cause affidavit further provides:

> Trooper Wolpman observed the driver, Mr. Jenkins, weaving in his lane back and forth and driving on the solid white line once on right side of roadway. The vehicle was slowing down and speeding up several times. The vehicle sped up to maximum speed of 60 mph and then would step on brakes and slow down to 40 to 45 mph and then speed up again to about 55 - 60 mph and then step on brakes and slow down again. There were no other vehicles in front of Mr. Jenkins' vehicle causing him to drive erratically. Due to my 15 years experience in

The quoted statement ends abruptly in mid-sentence due to space constraints on the affidavit form. Two sections lower on the form, Wolpman typed the following phrase, preceded by an asterisk: "dealing with DWI drivers, this type of erratic driving indicated to me that the driver may be intoxicated." Jenkins objected to the consideration of this last phrase in the reasonable-suspicion

---

[1] During the administrative hearing, counsel for DPS acknowledged that the reason she requested a supplemental probable cause affidavit was that additional details regarding the reasonable suspicion to stop was "what needed to be contained here." She further explained that initially, Wolpman was expected to appear at the hearing and testify in person. However, counsel for DPS determined that Wolpman's presence at the hearing was unnecessary and any omissions in his sworn report could be cured by a supplemental probable cause affidavit.

analysis based on its nonresponsiveness to the question posed in that section of the form.[2]  The phrase

appeared underneath the inquiry: "b. Sobriety tasks requested and performance obtained (explain):."

Counsel for DPS explained that the phrase was part of the officer's articulated reasonable suspicion

for the detention, but the phrase did not fit in the space provided above for the officer's reasonable

suspicion observations.  However, the administrative law judge ("ALJ") agreed with Jenkins's

argument that the written affidavit must speak for itself and that it would be impermissible to infer

that the phrase was intended to be a continuation of the officer's reasonable suspicion observations

without some indication that that is what was intended.  He thus sustained Jenkins's objection and

struck the phrase.  Nevertheless, the ALJ sustained DPS's suspension of Jenkins's driver's license.

On appeal to the county court at law, Jenkins argued that without the excised phrase,

DPS could not prove reasonable suspicion for the stop.  The trial court agreed and reversed the

administrative order.  DPS did not challenge the ALJ's decision to strike the phrase at the trial court,

nor does it raise the issue before this Court.

## DISCUSSION

By its first issue, DPS challenges the trial court's reversal of "the administrative

finding that Jenkins' driving constituted reasonable suspicion to initiate an investigative detention."

We determine whether reasonable suspicion exists from the totality of the circumstances.  *Woods v.*

---

[2] Initially, Jenkins objected to the admission of the entire supplemental probable cause affidavit, arguing that (1) the affidavit is not a "sworn report" and therefore could not be allowed into evidence under the public record exception to the hearsay rule, (2) there was no evidence that the affidavit was created on a DPS approved form, and (3) DPS waited ninety-two days before filing the supplemental report even though the Transportation Code advises that an officer file a sworn report within five days following an arrest.  The administrative law judge overruled these objections.

*State*, 956 S.W.2d 33, 38 (Tex. Crim. App. 1997). An officer may stop and briefly detain a citizen for investigative purposes if the officer has specific articulable facts that, in light of his experience and personal knowledge taken together with rational inferences from those facts, lead him to conclude that the person detained actually is, has been, or soon will be engaged in criminal activity. *Id.*; *Garza v. State*, 771 S.W.2d 549, 558 (Tex. Crim. App. 1989). Thus, the articulable facts relied on by an officer must support a reasonable suspicion that (1) activity out of the ordinary is occurring or has occurred, (2) the detainee is connected to the unusual activity, and (3) the unusual activity is related to crime. *Davis v. State*, 947 S.W.2d 240, 244 (Tex. Crim. App. 1997) (quoting *Garza*, 771 S.W.2d at 558); *Woods v. State*, 970 S.W.2d 770, 773 (Tex. App.—Austin 1998, pet. ref'd). The conduct need not violate a particular statute in order to give rise to reasonable suspicion; however, the officer must point to something that would lead a reasonable person to believe that the detainee was engaged in a criminal act. *Texas Dep't of Pub. Safety v. Bartow*, 994 S.W.2d 329, 330-31 (Tex. App.—Austin 1999, no pet.); *Gajewski v. State*, 944 S.W.2d 450, 452 (Tex. App.—Houston [14th Dist.] 1997, no pet.). Suspicious behavior or a "hunch" that something out of the ordinary is occurring is insufficient. *Davis*, 947 S.W.2d at 244 (quoting *Garza*, 771 S.W.2d at 558); *Woods*, 970 S.W.2d at 773.

In this case, Wolpman provided specific articulable facts indicating that some activity out of the ordinary was occurring—Jenkins was weaving within his lane of traffic and had repeatedly accelerated and decelerated while driving.[3] Wolpman also sufficiently connected Jenkins to this unusual activity. And Wolpman attempted to articulate his logical inference that based on his

---

[3] Jenkins did not argue to the trial court that the articulated facts were insufficient to support the reasonable suspicion determination, nor does he do so on appeal to this Court.

experience, personal knowledge, and the specific articulated facts, the observed unusual activity was related to a crime. However, the ALJ struck a significant phrase completing Wolpman's documentary testimony.

Jenkins argued before the ALJ and the county court that without the stricken phrase, there is no evidence in the record to show how the observed activity "created suspicion in [Wolpman's] mind, nor what the suspicion was indicative of." In other words, Jenkins argues that without the stricken phrase, DPS has failed to establish that Wolpman had a reasonable suspicion that the observed activity was related to the commission of a crime, *i.e.*, DWI. We disagree.

Courts review administrative license suspensions under the substantial evidence standard, reversing an ALJ's decision only if substantial rights of the aggrieved party have been prejudiced and the ALJ's findings are not reasonably supported by substantial evidence considering the reliable and probative evidence in the record as a whole. Tex. Gov't Code Ann. § 2001.174(2)(E) (West 2000); *see Mireles v. Texas Dep't of Pub. Safety*, 9 S.W.3d 128, 131 (Tex. 1999) (administrative action must be affirmed if record demonstrates reasonable basis for decision); *Blankenbeker v. Texas Dep't of Pub. Safety*, 990 S.W.2d 813, 814 (Tex. App.—Austin 1999, pet. denied); *Texas Dep't of Pub. Safety v. Latimer*, 939 S.W.2d 240, 244 (Tex. App.—Austin 1997, no writ). In support of his no-evidence argument, Jenkins relies exclusively on the one paragraph in both the sworn report and the supplemental affidavit in which Wolpman articulated the facts that gave rise to his reasonable suspicion to stop and make contact. Jenkins suggests that the reasonable suspicion paragraph in each of these documents is the *only* evidence that the ALJ could have considered in determining whether all the elements of reasonable suspicion were present in Wolpman's documentary testimony.

What Jenkins has failed to acknowledge is that in determining whether reasonable suspicion existed, the ALJ was not limited to the "reasonable suspicion" paragraphs in the sworn report and supplemental affidavit. To the contrary, the ALJ was entitled to review all of the evidence presented; this includes the entire sworn report and supplemental affidavit, including the pre-printed language on the form.

The sworn report and the supplemental affidavit are pre-printed, fill-in-the-blank forms, which begin with the following language: "I had probable cause to believe and do believe that Penn Alfonso Jenkins was driving or in actual physical control of a motor vehicle in a public place in this state while intoxicated. Facts in support of this belief are: . . . ." The preliminary statement is followed by several sub-categories, including the officer's "[r]easonable suspicion to stop and make contact" and "probable cause for arrest." In the space provided for the officer's reasonable suspicion, Wolpman detailed his observations of Jenkins's erratic driving conduct. *See supra* p. 2. The inclusion of Wolpman's reasonable suspicion observations on the pre-printed form for probable cause of DWI suggests that Wolpman's reasonable suspicion was related to the crime of DWI.[4] Because the basis for Wolpman's reasonable suspicion was included on the same form used to show probable cause of DWI and because it followed Wolpman's assertion of probable cause to believe that Jenkins was driving while intoxicated, the sworn report and the supplemental affidavit provide *some evidence* from which the ALJ could have concluded that Wolpman's observations of Jenkins's erratic driving

---

[4] We note that DPS never asserted any other basis for Wolpman's reasonable suspicion, such as the commission of a traffic offense, and Wolpman included no other basis for his reasonable suspicion on either the sworn report or the supplemental affidavit.

conduct led Wolpman to *infer* that Jenkins had been driving while intoxicated.[5] We therefore sustain DPS's first issue presented.

By one cross-point, Jenkins challenges the jurisdiction of this Court to consider this appeal. The Texas Supreme Court has recently addressed this issue and concluded that courts of appeals have jurisdiction to consider appeals of driver's license suspension hearings. *State Dep't of Pub. Safety v. Barlow*, 48 S.W.3d 174, 176 (Tex. 2001). Accordingly, Jenkins's cross-point is overruled.

## CONCLUSION

We sustain DPS's first issue presented. Jenkins's cross-point is overruled. Accordingly, we reverse the judgment of the county court at law and render judgment reinstating the ALJ's order of suspension.

Mack Kidd, Justice

Before Justices Kidd, B. A. Smith and Puryear

Reversed and Rendered

Filed: October 18, 2001

Publish

---

[5] We note that where DPS intends to rely exclusively on documentary evidence, it should proceed with extreme caution, especially if an irregularity exists in that evidence.

7