TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-09-00115-CV






Texas Department of Public Safety, Appellant


v.


Christopher Mason Wilkins, Appellee






FROM THE COUNTY COURT AT LAW NO. 2 OF TRAVIS COUNTY

NO. C-1-CV-08-006874, HONORABLE ERIC SHEPPERD, JUDGE PRESIDING





M E M O R A N D U M O P I N I O N


 At about 1:00 a.m. on June 22, 2007, Austin Police Officer Knutson stopped appellee
Christopher Mason Wilkins for running a red light and failure to maintain his lane of traffic. During
the stop, Officer Knutson decided to call Officer Brown to the scene so she could administer field
sobriety tests. Officer Brown concluded from field sobriety tests that Wilkins was intoxicated and
arrested Wilkins, who refused to submit to an alcohol concentration test. As a result of Wilkins's
refusal, appellant Texas Department of Public Safety suspended Wilkins's driver's license. (1) Wilkins
requested a hearing on the license suspension (2) and, following a hearing at which Officer Brown
testified and her report was submitted as evidence, the Administrative Law Judge ("ALJ") sustained
the suspension. Wilkins appealed to the trial court, which reversed the administrative decision. (3) The
Department appeals from the trial court's decision. We reverse the trial court's order and render
judgment affirming the ALJ's determination.

 When the Department seeks to suspend a driver's license for failure to provide a
blood or breath sample, and the person whose license is suspended requests a hearing, the
Department must show by a preponderance of the evidence that there was reasonable suspicion or
probable cause to stop or arrest the person; there was probable cause to believe the person was
operating a vehicle in a public place while intoxicated; the person was arrested and asked to submit
to a blood or breath test for alcohol; and the person refused to provide the requested specimen. Tex.
Transp. Code Ann. §§ 524.035, 724.042 (West Supp. 2010); Texas Dep't of Public Safety v. Torres,
54 S.W.3d 438, 440-41 (Tex. App.--Fort Worth 2001, no pet.). An ALJ's decision to suspend a
driver's license is reviewed for substantial evidence and should be reversed only if the ALJ's
findings are not supported by substantial evidence, considering the reliable and probative evidence
as a whole, and if the aggrieved party's substantial rights have been prejudiced. Texas Dep't of
Public Safety v. Jenkins, 60 S.W.3d 304, 308 (Tex. App.--Austin 2001, no pet.). A reviewing court
may not substitute its judgment for the ALJ's. Railroad Comm'n v. Torch Operating Co.,
912 S.W.2d 790, 792 (Tex. 1995).

 There is no dispute that Officer Knutson had probable cause to stop Wilkins for
failing to maintain a single lane and running a red light. Rather, the issue is Wilkins's continued
detention beyond his immediate encounter with Knutson after Knutson witnessed the traffic
violations. The State argues that Wilkins had the burden of showing that the detention was
unreasonable; that the detention was reasonable and that the trial court erred in finding otherwise;
and that because Wilkins refused to provide a breath or blood sample for testing, the trial court erred
in reversing the administrative suspension of Wilkins's license. Wilkins insists that the Department
did not show Knutson or Brown had probable cause or reasonable suspicion to detain him beyond
the scope of the traffic offenses to investigate whether Wilkins was driving while intoxicated
("DWI"). We disagree. Based on the evidence presented, the ALJ could reasonably have concluded
that Officer Brown's investigation and continuing detention of Wilkins was proper, and the trial
court erred in reversing the ALJ.

 Whether a detention is "reasonable" under the Fourth Amendment is a fact-intensive
inquiry. Kothe v. State, 152 S.W.3d 54, 62 (Tex. Crim. App. 2004). "Reasonableness" is
determined by looking to the totality of the circumstances of the stop and "requires a balance
between the public interest served and the individual's right to be free from arbitrary detentions and
intrusions." Id. at 63. We should ask first whether the officer's action was justified at its inception
and second whether the scope of the detention was reasonably related to the facts that initially
justified the stop. Id. (citing Terry v. Ohio, 392 U.S. 1, 19-20 (1968)). Generally, a traffic stop and
investigation should last no longer than necessary to effect the purpose of the stop. Id. However,
during a routine traffic stop, the police may ask for information such as the driver's license and
vehicle registration and may take the time to run a check on that information. Id. Not until the
background check is completed and the officer determines that the driver has a valid license, has no
outstanding warrants, and is driving a car that is not stolen is the traffic-stop investigation fully
resolved and should the driver be allowed to leave. Id. at 63-64. "[O]nce the original purpose for
the stop is exhausted, police may not unnecessarily detain drivers solely in hopes of finding evidence
of some other crime." Id. at 64. However, there is no set time-limit on a routine traffic stop and
"instead, the issue is 'whether the police diligently pursued a means of investigation that was likely
to confirm or dispel their suspicions quickly, during which time it was necessary to detain the
defendant.'" Id. at 64-65 (quoting United States v. Sharpe, 470 U.S. 675, 685-86 (1985)). 

 At the administrative hearing, Officer Brown provided the only testimony, stating that
Officer Knutson stopped Wilkins for failure to maintain a single lane and running a red light and
then called Brown to conduct a DWI investigation. She did not recall how much time passed
between the initial stop and her arrival, nor did she recall what Knutson said about why he thought
Wilkins might be intoxicated. Brown testified that she noticed a strong odor of alcoholic beverage
when she spoke to Wilkins, but when asked about other signs of intoxication, she said, "I don't recall
exactly what I noticed right there on the scene." In her report and probable cause affidavit, which
were introduced into evidence, Brown stated: she smelled a strong odor of alcoholic beverages;
Wilkins' eyes were glassy and dilated; and he swayed when walking and standing, showed three of
four indicators of intoxication on the horizontal gaze nystagmus test, and had problems performing
the three other field sobriety tests she administered. Brown's report also stated that Wilkins admitted
to drinking one beer. In the statutory warning form, Brown stated that she requested a blood or
breath sample but that Wilkins refused to provide a specimen or sign the form.

 "[T]here is no legal authority stating that the DPS is required to prove a connection
between the reason for the stop and the reason for [the defendant's] arrest. It is well established that
once an officer has reasonable suspicion to stop a vehicle, as in this case, he may conduct an
investigative detention of everyone in the vehicle." Torres, 54 S.W.3d at 441 (citing Graham v.
State, 893 S.W.2d 4, 7 (Tex. App.--Dallas 1994, no pet.)). In this case, there is no evidence that
Knutson had finished his investigation into the traffic offenses at the time Brown arrived on the
scene, that the length of the detention was excessive, or that Knutson unreasonably delayed the
conclusion of the traffic stop to allow Brown time to arrive. See Kothe, 152 S.W.3d at 66-67 ("there
is no testimony or insinuation that Deputy Forsland was purposefully prolonging Mr. Kothe's
detention"); Caraway v. State, 255 S.W.3d 302, 308 (Tex. App.--Eastland 2008, no pet.) ("There
was no evidence that Trooper Shea failed to diligently pursue his investigation or that he delayed in
writing the warning in an effort to prolong the stop."). 

 Based on Officer Brown's testimony and the documents entered into evidence, the
ALJ could have reasonably inferred that Officer Knutson, like Brown, had smelled a strong odor of
alcoholic beverage when talking to Wilkins and had seen that he had glassy, dilated eyes or swayed
when standing. (4) See Curtis v. State, 238 S.W.3d 376, 381 (Tex. Crim. App. 2007) (rational
inferences may be drawn from facts); Hesskew v. Texas Dep't of Public Safety, 144 S.W.3d 189, 192
(Tex. App.--Tyler 2004, no pet.) (officer's affidavit should not be read in hyper-technical sense;
"Courts are permitted to draw reasonable inferences from the facts supporting a law enforcement
officer's sworn statements."); Jenkins, 60 S.W.3d at 309 (statements on forms prepared following
arrest amounted to some evidence from which ALJ could have concluded that officer inferred driver
was intoxicated). (5) The ALJ could reasonably have concluded that Knutson had probable cause to
suspect that Wilkins might be intoxicated based on Wilkins's running a red light and drifting out of
his lane and Brown's observations of the smell of alcoholic beverage and Wilkins's glassy, dilated
eyes, observations that the ALJ reasonably could have inferred were made by Knutson as well. See
Curtis, 238 S.W.3d at 381 (court of appeals should have considered lateness of hour, officer's
experience in detecting intoxicated drivers, and rational inferences that could be drawn from facts
articulated by officers); see also Ruiz v. State, 907 S.W.2d 600, 605 (Tex. App.--Corpus Christi
1995, no pet.) (officer who continued detention after departure of original officer had probable cause
to continue detention because he had information from original officer that defendant had committed
traffic offense and "some suspicion" that defendant was intoxicated). 

 The ALJ reasonably concluded that this was not a case where Officer Knutson
concluded his traffic stop and then unreasonably extended the traffic stop as a "fishing expedition"
to look for evidence of other crimes. Instead, the ALJ could have concluded that in the course of the
traffic stop, evidence of possible intoxication led Knutson to call Officer Brown to conduct a DWI
investigation. Because substantial evidence supports the ALJ's conclusion that Officer Brown's
investigation and continuing detention of Wilkins was proper, the trial court erred in reversing that
determination. (6) See Jenkins, 60 S.W.3d at 308. Because of the evidence and the rational inferences
that the ALJ could have made, the trial court erred in substituting its own judgment for the ALJ's
and reversing the ALJ's decision. See Torch Operating Co., 912 S.W.2d at 792. We reverse the trial
court's order and reinstate the ALJ's administrative decision authorizing the Department to suspend
Wilkins's driver's license.

 

 __________________________________________

 David Puryear, Justice

Before Justices Puryear, Pemberton and Henson

Reversed and Rendered

Filed: March 31, 2011
1. See Tex. Transp. Code Ann. § 724.035 (West Supp. 2010).
2. See id. §§ 524.035, 724.041 (West Supp. 2010).
3. See id. § 524.041 (West 2007).
4. Wilkins relies on Texas Department of Public Safety v. Rodriguez to support his argument
that because there was no direct evidence of Officer Knutson's observations beyond the infractions
leading to the traffic stop, the continued detention and DWI investigation were improper. 
953 S.W.2d 362, 364-65 (Tex. App.--Austin 1997, no writ). However, in this case, Officer Brown's
arrest reports state that she smelled a strong odor of alcoholic beverages and saw that Wilkins's eyes
were glassy and dilated. As we note above, the ALJ could have concluded that Knutson made
similar observations, which caused him to call Brown for a DWI investigation. This is precisely the
link between the initial stop and the DWI investigation and arrest that was lacking in Rodriguez,
where the evidence did not reflect signs of intoxication until Rodriguez was being given field
sobriety tests. See id. at 363.
5. Further, "when one officer, participating among a team of officers, observes the
incriminating conduct of a defendant, the observing officer's knowledge, together with any
information possessed by the team, can be collectively considered in determining whether probable
cause to arrest exists." Sanchez v. State, 797 S.W.2d 951, 953 (Tex. App.--Dallas 1990, no pet.)
(citing Pyles v. State, 755 S.W.2d 98, 109 (Tex. Crim. App. 1988); Willis v. State, 669 S.W.2d 728,
730-31 (Tex. Crim. App. 1984); Woodward v. State, 668 S.W.2d 337, 344 (Tex. Crim. App. 1982)
(op. on reh'g)); see also Smith v. State, 58 S.W.3d 784, 792 n.10 (Tex. App.--Houston [14th Dist.]
2001, pet. ref'd) (citing United States v. Hensley, 469 U.S. 221, 230-33 (1985)) ("Under the
collective or imputed knowledge doctrine, an arrest or search is permissible where the actual
arresting or searching officer lacks the specific information to form the basis for probable cause or
reasonable suspicion, but sufficient information to justify the arrest or search was known by other
law enforcement officials initiating or involved with the investigation."). We see no reason why the
imputed knowledge doctrine should not apply in an evaluation of whether there was reasonable
suspicion to transform the traffic stop into a DWI investigation.
6. The ALJ found in her order that there was reasonable suspicion to stop Wilkins for a traffic
violation and that there was probable cause to arrest Wilkins based on the odor of alcoholic
beverage, glassy eyes, swaying, and poor performance on the field sobriety tests. In reversing the
ALJ, the trial court made no findings or conclusions either during the hearings or in its order, which
stated only that, "The Court, having considered the administrative record and hearing argument of
counsel, is of the opinion that the Administrative Decision should be REVERSED."