# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-09-00115-CV

**Texas Department of Public Safety, Appellant**

**v.**

**Christopher Mason Wilkins, Appellee**

---

### FROM THE COUNTY COURT AT LAW NO. 2 OF TRAVIS COUNTY
### NO. C-1-CV-08-006874, HONORABLE ERIC SHEPPERD, JUDGE PRESIDING

---

## M E M O R A N D U M   O P I N I O N

At about 1:00 a.m. on June 22, 2007, Austin Police Officer Knutson stopped appellee Christopher Mason Wilkins for running a red light and failure to maintain his lane of traffic. During the stop, Officer Knutson decided to call Officer Brown to the scene so she could administer field sobriety tests. Officer Brown concluded from field sobriety tests that Wilkins was intoxicated and arrested Wilkins, who refused to submit to an alcohol concentration test. As a result of Wilkins's refusal, appellant Texas Department of Public Safety suspended Wilkins's driver's license.[1] Wilkins requested a hearing on the license suspension[2] and, following a hearing at which Officer Brown testified and her report was submitted as evidence, the Administrative Law Judge ("ALJ") sustained the suspension. Wilkins appealed to the trial court, which reversed the administrative decision.[3] The

---

[1] *See* Tex. Transp. Code Ann. § 724.035 (West Supp. 2010).

[2] *See id*. §§ 524.035, 724.041 (West Supp. 2010).

[3] *See id.* § 524.041 (West 2007).

Department appeals from the trial court's decision. We reverse the trial court's order and render judgment affirming the ALJ's determination.

When the Department seeks to suspend a driver's license for failure to provide a blood or breath sample, and the person whose license is suspended requests a hearing, the Department must show by a preponderance of the evidence that there was reasonable suspicion or probable cause to stop or arrest the person; there was probable cause to believe the person was operating a vehicle in a public place while intoxicated; the person was arrested and asked to submit to a blood or breath test for alcohol; and the person refused to provide the requested specimen. Tex. Transp. Code Ann. §§ 524.035, 724.042 (West Supp. 2010); *Texas Dep't of Public Safety v. Torres*, 54 S.W.3d 438, 440-41 (Tex. App.—Fort Worth 2001, no pet.). An ALJ's decision to suspend a driver's license is reviewed for substantial evidence and should be reversed only if the ALJ's findings are not supported by substantial evidence, considering the reliable and probative evidence as a whole, and if the aggrieved party's substantial rights have been prejudiced. *Texas Dep't of Public Safety v. Jenkins*, 60 S.W.3d 304, 308 (Tex. App.—Austin 2001, no pet.). A reviewing court may not substitute its judgment for the ALJ's. *Railroad Comm'n v. Torch Operating Co.*, 912 S.W.2d 790, 792 (Tex. 1995).

There is no dispute that Officer Knutson had probable cause to stop Wilkins for failing to maintain a single lane and running a red light. Rather, the issue is Wilkins's continued detention beyond his immediate encounter with Knutson after Knutson witnessed the traffic violations. The State argues that Wilkins had the burden of showing that the detention was unreasonable; that the detention was reasonable and that the trial court erred in finding otherwise;

2

and that because Wilkins refused to provide a breath or blood sample for testing, the trial court erred in reversing the administrative suspension of Wilkins's license. Wilkins insists that the Department did not show Knutson or Brown had probable cause or reasonable suspicion to detain him beyond the scope of the traffic offenses to investigate whether Wilkins was driving while intoxicated ("DWI"). We disagree. Based on the evidence presented, the ALJ could reasonably have concluded that Officer Brown's investigation and continuing detention of Wilkins was proper, and the trial court erred in reversing the ALJ.

Whether a detention is "reasonable" under the Fourth Amendment is a fact-intensive inquiry. *Kothe v. State*, 152 S.W.3d 54, 62 (Tex. Crim. App. 2004). "Reasonableness" is determined by looking to the totality of the circumstances of the stop and "requires a balance between the public interest served and the individual's right to be free from arbitrary detentions and intrusions." *Id.* at 63. We should ask first whether the officer's action was justified at its inception and second whether the scope of the detention was reasonably related to the facts that initially justified the stop. *Id.* (citing *Terry v. Ohio*, 392 U.S. 1, 19-20 (1968)). Generally, a traffic stop and investigation should last no longer than necessary to effect the purpose of the stop. *Id.* However, during a routine traffic stop, the police may ask for information such as the driver's license and vehicle registration and may take the time to run a check on that information. *Id.* Not until the background check is completed and the officer determines that the driver has a valid license, has no outstanding warrants, and is driving a car that is not stolen is the traffic-stop investigation fully resolved and should the driver be allowed to leave. *Id.* at 63-64. "[O]nce the original purpose for the stop is exhausted, police may not *unnecessarily* detain drivers solely in hopes of finding evidence

3

of some other crime." *Id.* at 64. However, there is no set time-limit on a routine traffic stop and "instead, the issue is 'whether the police diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly, during which time it was necessary to detain the defendant.'" *Id.* at 64-65 (quoting *United States v. Sharpe*, 470 U.S. 675, 685-86 (1985)).

At the administrative hearing, Officer Brown provided the only testimony, stating that Officer Knutson stopped Wilkins for failure to maintain a single lane and running a red light and then called Brown to conduct a DWI investigation. She did not recall how much time passed between the initial stop and her arrival, nor did she recall what Knutson said about why he thought Wilkins might be intoxicated. Brown testified that she noticed a strong odor of alcoholic beverage when she spoke to Wilkins, but when asked about other signs of intoxication, she said, "I don't recall exactly what I noticed right there on the scene." In her report and probable cause affidavit, which were introduced into evidence, Brown stated: she smelled a strong odor of alcoholic beverages; Wilkins' eyes were glassy and dilated; and he swayed when walking and standing, showed three of four indicators of intoxication on the horizontal gaze nystagmus test, and had problems performing the three other field sobriety tests she administered. Brown's report also stated that Wilkins admitted to drinking one beer. In the statutory warning form, Brown stated that she requested a blood or breath sample but that Wilkins refused to provide a specimen or sign the form.

"[T]here is no legal authority stating that the DPS is required to prove a connection between the reason for the stop and the reason for [the defendant's] arrest. It is well established that once an officer has reasonable suspicion to stop a vehicle, as in this case, he may conduct an investigative detention of everyone in the vehicle." *Torres*, 54 S.W.3d at 441 (citing *Graham v.*

4

*State*, 893 S.W.2d 4, 7 (Tex. App.—Dallas 1994, no pet.)). In this case, there is no evidence that Knutson had finished his investigation into the traffic offenses at the time Brown arrived on the scene, that the length of the detention was excessive, or that Knutson unreasonably delayed the conclusion of the traffic stop to allow Brown time to arrive. *See Kothe*, 152 S.W.3d at 66-67 ("there is no testimony or insinuation that Deputy Forsland was purposefully prolonging Mr. Kothe's detention"); *Caraway v. State*, 255 S.W.3d 302, 308 (Tex. App.—Eastland 2008, no pet.) ("There was no evidence that Trooper Shea failed to diligently pursue his investigation or that he delayed in writing the warning in an effort to prolong the stop.").

Based on Officer Brown's testimony and the documents entered into evidence, the ALJ could have reasonably inferred that Officer Knutson, like Brown, had smelled a strong odor of alcoholic beverage when talking to Wilkins and had seen that he had glassy, dilated eyes or swayed when standing.[4] *See Curtis v. State*, 238 S.W.3d 376, 381 (Tex. Crim. App. 2007) (rational inferences may be drawn from facts); *Hesskew v. Texas Dep't of Public Safety*, 144 S.W.3d 189, 192 (Tex. App.—Tyler 2004, no pet.) (officer's affidavit should not be read in hyper-technical sense; "Courts are permitted to draw reasonable inferences from the facts supporting a law enforcement officer's sworn statements."); *Jenkins*, 60 S.W.3d at 309 (statements on forms prepared following

---

[4] Wilkins relies on *Texas Department of Public Safety v. Rodriguez* to support his argument that because there was no direct evidence of Officer Knutson's observations beyond the infractions leading to the traffic stop, the continued detention and DWI investigation were improper. 953 S.W.2d 362, 364-65 (Tex. App.—Austin 1997, no writ). However, in this case, Officer Brown's arrest reports state that she smelled a strong odor of alcoholic beverages and saw that Wilkins's eyes were glassy and dilated. As we note above, the ALJ could have concluded that Knutson made similar observations, which caused him to call Brown for a DWI investigation. This is precisely the link between the initial stop and the DWI investigation and arrest that was lacking in *Rodriguez*, where the evidence did not reflect signs of intoxication until Rodriguez was being given field sobriety tests. *See id*. at 363.

arrest amounted to some evidence from which ALJ could have concluded that officer inferred driver was intoxicated).[5] The ALJ could reasonably have concluded that Knutson had probable cause to suspect that Wilkins might be intoxicated based on Wilkins's running a red light and drifting out of his lane and Brown's observations of the smell of alcoholic beverage and Wilkins's glassy, dilated eyes, observations that the ALJ reasonably could have inferred were made by Knutson as well. *See Curtis*, 238 S.W.3d at 381 (court of appeals should have considered lateness of hour, officer's experience in detecting intoxicated drivers, and rational inferences that could be drawn from facts articulated by officers); *see also Ruiz v. State*, 907 S.W.2d 600, 605 (Tex. App.—Corpus Christi 1995, no pet.) (officer who continued detention after departure of original officer had probable cause to continue detention because he had information from original officer that defendant had committed traffic offense and "some suspicion" that defendant was intoxicated).

The ALJ reasonably concluded that this was not a case where Officer Knutson concluded his traffic stop and then unreasonably extended the traffic stop as a "fishing expedition" to look for evidence of other crimes. Instead, the ALJ could have concluded that in the course of the

---

[5] Further, "when one officer, participating among a team of officers, observes the incriminating conduct of a defendant, the observing officer's knowledge, together with any information possessed by the team, can be collectively considered in determining whether probable cause to arrest exists." *Sanchez v. State*, 797 S.W.2d 951, 953 (Tex. App.—Dallas 1990, no pet.) (citing *Pyles v. State*, 755 S.W.2d 98, 109 (Tex. Crim. App. 1988); *Willis v. State*, 669 S.W.2d 728, 730-31 (Tex. Crim. App. 1984); *Woodward v. State*, 668 S.W.2d 337, 344 (Tex. Crim. App. 1982) (op. on reh'g)); *see also Smith v. State*, 58 S.W.3d 784, 792 n.10 (Tex. App.—Houston [14th Dist.] 2001, pet. ref'd) (citing *United States v. Hensley*, 469 U.S. 221, 230-33 (1985)) ("Under the collective or imputed knowledge doctrine, an arrest or search is permissible where the actual arresting or searching officer lacks the specific information to form the basis for probable cause or reasonable suspicion, but sufficient information to justify the arrest or search was known by other law enforcement officials initiating or involved with the investigation."). We see no reason why the imputed knowledge doctrine should not apply in an evaluation of whether there was reasonable suspicion to transform the traffic stop into a DWI investigation.

traffic stop, evidence of possible intoxication led Knutson to call Officer Brown to conduct a DWI investigation. Because substantial evidence supports the ALJ's conclusion that Officer Brown's investigation and continuing detention of Wilkins was proper, the trial court erred in reversing that determination.[6] *See Jenkins*, 60 S.W.3d at 308.  Because of the evidence and the rational inferences that the ALJ could have made, the trial court erred in substituting its own judgment for the ALJ's and reversing the ALJ's decision.  *See Torch Operating Co.*, 912 S.W.2d at 792.  We reverse the trial court's order and reinstate the ALJ's administrative decision authorizing the Department to suspend Wilkins's driver's license.

_____

David Puryear,  Justice

Before Justices Puryear, Pemberton and Henson

Reversed and Rendered

Filed:   March 31, 2011

---

[6] The ALJ found in her order that there was reasonable suspicion to stop Wilkins for a traffic violation and that there was probable cause to arrest Wilkins based on the odor of alcoholic beverage, glassy eyes, swaying, and poor performance on the field sobriety tests.  In reversing the ALJ, the trial court made no findings or conclusions either during the hearings or in its order, which stated only that, "The Court, having considered the administrative record and hearing argument of counsel, is of the opinion that the Administrative Decision should be REVERSED."