NUMBERS 13-01-251-CR
& 13-01-252-CR

 

                         COURT OF APPEALS

 

               THIRTEENTH DISTRICT OF TEXAS

 

                  CORPUS CHRISTI B
EDINBURG

 



 

MICHAEL ORLANDA HALE,                                        Appellant,

 

                                           v.

 

THE
STATE OF TEXAS,                                              Appellee.

 



 

                  On appeal from the 260th
District Court 

                           of Orange
County, Texas.

 



 

                                  O P I N I O
N

 

                   Before Justices Dorsey, Yañez, and Baird[1]

                             Opinion by Justice Baird



 








Appellant was charged
in two indictments with the offense of possession of marihuana: cause no.
D-990-372-R alleged possession of more than four ounces but not more than five
pounds; and, cause no. D-000,036-R alleged possession of more than five but
less than 50 pounds.  The trial judge
overruled appellant=s motions to suppress
the alleged contraband in each case, and appellant pled guilty to the charged
offenses.  The trial judge assessed
punishment at twelve months confinement in a state jail facility in cause no.
D-990-372-R, and four years confinement in the Texas Department of Criminal
Justice--Institutional Division and a fine of $3,500 in cause no.
D-000,036-R.  Appellant now appeals the
denial of the motions to suppress.

I.  Standard of Appellate Review.








An appellate
court reviews the trial judge's ruling whether to admit or exclude evidence
under an abuse of discretion standard.  Wilks
v. State, 983 S.W.2d 863, 866 (Tex. App.BCorpus Christi 1998, no pet.).  In reviewing a trial court's ruling on a motion
to suppress, we afford almost total deference to the trial court's
determination of the historical facts that the record supports, especially when
the trial court's findings turn on evaluating a witness's credibility and
demeanor.  State v. Ross, 32
S.W.3d 853, 856 (Tex. Crim. App. 2000); Guzman v. State, 955 S.W.2d 85,
89 (Tex. Crim. App. 1997).  We afford the
same amount of deference to the trial court's ruling on "application of
law to fact questions," also known as "mixed questions of law and
fact," if resolving those ultimate questions turns on evaluating
credibility and demeanor.  Ross,
32 S.W.3d at 856; Guzman, 955 S.W.2d at 89.  However, we review de novo questions
of law and "mixed questions of law and fact" that do not turn on an
evaluation of credibility and demeanor.  Ross,
32 S.W.3d at 856; Guzman, 955 S.W.2d at 89. A review of a trial court's
ruling on a motion to suppress presents an application of law to a fact
question.  Maestas v. State, 987
S.W.2d 59, 62 (Tex. Crim. App. 1999).

The trial judge heard
the suppression motions simultaneously because the same peace officer stopped
appellant=s vehicle on the two
occasions in question.  That officer was
the only witness at the suppression hearing. 
To avoid confusion, we will address the trial court=s rulings separately.

II.  May 2, 1999

A.  Factual Summary.

 

On May 2, 1999, Bridge
City Police Department Officer Brad Frye was patrolling Interstate 10 when he
saw appellant, on two occasions, fail to indicate a lane change when passing
other vehicles.  After pulling behind the
vehicle, Frye noticed that the passenger was not wearing a seat belt.  Frye stopped appellant=s vehicle, and
approached appellant, who handed Frye a ATriple A@ card rather than a
driver=s license.  Appellant never provided a valid driver=s license to
Frye.  Frye asked and received permission
from appellant to search the vehicle. 
Appellant never withdrew his consent and, in fact, opened the back door
for Frye.  During the search, Frye
smelled what he believed to be marihuana, and subsequently found marihuana in a
piece of luggage which appellant identified as his.  This is the marihuana alleged in cause no.
D-990-372-R.[2]

B.  Analysis.








Our analysis of this
stop begins with the trial judge=s written findings of
fact, which state that appellant=s passenger was not
wearing a seat belt.[3]  This is a 
traffic offense.  Texas Dept.
of Public Safety v. Torres, 54 S.W.3d 438, 441 (Tex. App.BFort Worth 2001, no
pet. h.) (failure to wear a seat belt while in the front seat of a vehicle
violates Tex. Transp. Code Ann. ' 545.413 (Vernon Supp.
2001)).

Appellant raises two
arguments in connection with this stop. 
First, that Frye did not stop appellant for a traffic offense but,
rather, that the traffic stop was merely a pretext to secure the complained of
evidence.  This argument must fail
because the pretext arrest doctrine is no longer viable.  Crittenden v.
State, 889 S.W.2d 668, 674 (Tex. Crim. App. 1995) (holding objectively
valid traffic stop is not unlawful under Article I, ' 9 of the Texas
Constitution just because the detaining officer may have ulterior motive for
making it); Garcia v. State, 827 S.W.2d 937, 944- 45 (Tex. Crim. App.
1992) (holding that pretext arrest is no longer a viable defense
as a matter of Fourth Amendment jurisprudence).








Appellant=s second argument is
that Frye exceeded the permissible scope of the detention.  Appellant correctly cites Davis v. State,
947 S.W.2d 240 (Tex. Crim. App. 1997), for the proposition that once the reason
for the stop has been satisfied, the stop may not be used as a "fishing
expedition for unrelated criminal activity."  Davis, 947 S.W.2d at 243.  But Davis is distinguishable because
there the defendant did not consent to the search of his vehicle, 947 S.W.2d at
241, whereas, in the instant case, appellant did consent.  Consequently, Davis is not
controlling.  Appellant does not argue
his consent was not voluntarily obtained.

For both of these
reasons, we hold the May 2, 1999 stop and the subsequent recovery of the
contraband was not unlawful.

III.  August 1, 1999.

A.  Factual Summary.

 








On August 1, 1999,
three months after the initial stop, Frye was patrolling the same section of
Interstate 10 when he saw appellant, who was driving the same vehicle.  Upon recognizing appellant, Frye turned his
vehicle around and began pursuit.[4]  Appellant was in the right lane of
traffic.  When Frye was approximately
1000 feet behind appellant, Frye saw the right tires of appellant=s vehicle cross the
white line that separates the right lane of traffic from the shoulder.  Only the right tires crossed onto the
shoulder for a distance estimated by Frye to be one to two feet.  This occurred as appellant approached an
entrance ramp and was done without appellant indicating a lane change.  Appellant then returned to the right lane of
traffic, and never drifted into the other lane of traffic.  Frye testified other vehicles were in the
immediate vicinity, but further explained there were no other vehicles, parked
cars, highway department objects or cones or barrels on the shoulder but there
were a few cars in the left lane, Amaybe one or two in
front of [appellant].@  Frye further testified that appellant was
neither speeding nor going too slow.  And
that appellant did not cause an accident or almost cause an accident.

Frye activated his
emergency equipment and stopped appellant=s vehicle.  Frye requested, but appellant was unable to
produce, a valid driver=s license.  Frye asked for permission to search the
vehicle, but appellant refused.  Frye
then explained that appellant was not under arrest, and read appellant his Miranda
warnings.  Appellant stated he understood
his rights and agreed to answer Frye=s questions.  When Frye asked appellant if he had marihuana
in the vehicle, appellant answered that he had two joints in the vehicle.  Frye arrested appellant for not having a
valid driver=s license.  Frye conducted an inventory search of the
vehicle and found the marihuana alleged in cause no. D-000,036-R.

B.  Analysis.

In connection with
this stop, the trial judge explicitly found appellant was Aweaving within his own
lane of traffic and driving in an erratic manner,@ that Frye believed appellant Ato be intoxicated or
under the influence of some other substance,@ and Frye remembered appellant Adid not have a driver=s license.@  We will address these findings seriatim.

i.  Traffic Offense.








Stopping an
automobile and detaining its occupants constitutes a "seizure" within
the meaning of the Fourth Amendment.  Whren
v. United States, 517 U.S. 806, 809‑10 (1996); Delaware v. Prouse,
440 U.S. 648, 653‑54 (1979); United States v. Martinez‑Fuerte,
428 U.S. 543, 556‑58 (1976); United States v. Brignoni‑Ponce,
422 U.S. 873, 878 (1975).  A peace
officer's decision to stop an automobile is reasonable under the Fourth
Amendment when the officer has probable cause to believe the driver committed a
traffic offense.  Whren, 517 U.S.
at 810; Texas
Dep't of Pub. Safety v. Walter, 28 S.W.3d at 542.  If an actual violation of law is observed,
there is probable cause for the traffic stop, and law enforcement officials are
free to enforce the laws and detain a person for that violation.  Tex.
Code Crim. Proc. Ann. art. 14.01(b) (Vernon 1977); Garcia v. State,
827 S.W.2d 937, 944 (Tex. Crim. App.1992); Williams v. State, 726 S.W.2d
99, 101 (Tex. Crim. App. 1986); Howard v. State, 932 S.W.2d 216, 218
(Tex. App.BTyler 1996,
pet. ref'd) (holding officer's testimony that violation of a statute has
occurred is sufficient to show probable cause to make an arrest without a
warrant).  Therefore, violation of a
traffic law in an officer's presence is sufficient authority for an initial
stop of a vehicle.  Armitage v. State,
637 S.W.2d 936, 939 (Tex. Crim. App. 1982); Valencia v. State, 820
S.W.2d 397, 400 (Tex. App.BHouston [14th
Dist.] 1991, pet. ref'd).








The first question
related to the instant stop is whether appellant violated the traffic
laws.  The State argues a violation
occurred Awhen [appellant] left
his lane of travel without signaling his intention to do so.@  State=s brief, pg. 9.  This argument is flawed in three
respects.  First, it is not supported by
the trial judge=s findings of fact
which expressly state appellant was driving Awithin his own lane of traffic.@  (Emphasis added).  Second, even if appellant left his lane of
travel without signaling, that conduct is not an offense.  Section 545.104(a) provides that signals are
mandatory only when turning, changing lanes, or starting from a parked
position.  Tex. Transp. Code Ann. ' 545.104(a)  (Vernon 1999); Trahan v. State, 16
S.W.3d 146, 147 (Tex. App.BBeaumont 2000, no
pet.).  Therefore, since appellant did
not turn or change lanes, there was no traffic violation, even if the facts
were as Frye suspected them to be.  United
States v. Lopez‑Valdez, 178 F.3d 282, 288 (5th Cir.1999); United
States v. Miller, 146 F.3d 274, 279 (5th Cir.1998).

Third, section
545.060(a) of the Transportation Code provides that an operator on a roadway
divided into two or more clearly marked lanes for traffic (1) shall drive as
nearly as practical entirely within a single lane; and (2) may not move from
the lane unless that movement can be made safely.  Tex.
Transp. Code Ann. ' 545.060(a) (Vernon
1999).  A violation of section 545.060(a)
occurs only when a vehicle fails to stay within its lane and that movement is
not safe or is not made safely.  State
v. Cerny, 28 S.W.3d 796, 800 (Tex. App.BCorpus Christi 2000, no pet.); Hernandez v.
State, 983 S.W.2d 867, 871 (Tex. App.BAustin 1998, pet.
ref'd).








In the instant case,
there is no finding by the trial judge either that appellant failed to stay
within his lane of traffic or that he moved in an unsafe manner.  In fact, the evidence is to the contrary.  As noted above, Frye testified the right
tires of appellant=s vehicle crossed onto
the shoulder just once, and even then only for a distance of one to two
feet.  Appellant=s vehicle never
drifted into the other lane of traffic. 
Additionally, there were no other vehicles, parked cars, highway
department objects or cones or barrels on the shoulder.  Cerny, 28 S.W.3d at 801 (swerve over
solid white line separating the traffic lane from the right shoulder of the
road three or four times not sufficient to establish violation of ' 545.060); Hernandez,
983 S.W.2d at 871 (single instance of crossing a lane dividing line by
eighteen to twenty‑four inches into a lane of traffic traveling the same
direction not shown to be unsafe or dangerous does not provide reasonable basis
for suspecting defendant committed traffic offense).

For these three
reasons, we hold that on August 1, 1999, Frye did not have probable cause
to believe appellant committed a traffic offense. Whren, 517 U.S. at
810; Texas Dep't of Pub. Safety v. Walter, 28 S.W.3d at 542.

ii.  Intoxication.

We next turn to the
judge=s finding that Frye
believed appellant to be intoxicated or under the influence of some other
substance.  Probable cause exists when
the facts and circumstances within an officer's personal knowledge and of which
he has reasonably trustworthy information are sufficient to warrant a person of
reasonable caution to believe that, more likely than not, a particular suspect
has committed an offense.  Hughes v.
State, 878 S.W.2d 142 (Tex. Crim. App. 1992).  After an officer stops a defendant for a
traffic offense, there must be additional facts constituting probable cause to
arrest the defendant for driving while intoxicated.  Texas Dep't of Public Safety v. Rodriguez,
953 S.W.2d 362, 364 (Tex. App.BAustin 1997, no
pet.).  There must be some causal link
between the probable cause to stop the vehicle and the subsequent probable
cause to arrest the motorist for driving while intoxicated.  Id. at 364‑65.








As noted in subsection
i, supra, a traffic violation will not serve as the basis for the stop
of appellant=s vehicle.  But even if it could, there is no causal
connection between the stop and possible intoxication.  Frye did not make any inquiry to determine
appellant=s state of sobriety,
and Frye did not perform any field sobriety tests on appellant to determine
whether appellant was intoxicated or under the influence of another substance.[5]  Therefore, we hold the August 1, 1999, stop
was not justified by Frye=s belief that
appellant may have been intoxicated.[6]

iii.  No valid driver=s license.








We end with the trial
judge=s finding that A[a]fter stopping the
vehicle, [appellant] could not produce a driver=s license.@  This argument fails for two reasons.  First, this finding relates to what occurred after
the stop.  As noted in subsections ii and
iii, supra, there was no justification for the stop.  Our law is clear that what occurs after
an illegal stop cannot be used to cure the initial illegality.  Wilson v. State, 621 S.W.2d 799, 804
(Tex. Crim. App. 1981); Colston v. State, 511 S.W.2d 10, 13 (Tex. Crim.
App. 1974).

Secondly, when asked
if he knew whether appellant had a driver=s licence, Frye
admitted he did not know until he arrested appellant.  Frye further admitted that he could not
legally stop someone on the hunch:  AI bet he doesn=t have a license.@ Finally, Frye
conceded that it would have been easy for appellant to have secured a driver=s license after the
May 2 stop and before the August 1 stop.[7]  An inchoate and unparticularized suspicion or
hunch may not serve as the basis for a lawful detention.  United States v. Sokolow, 490 U.S. 1,
7 (1989); Terry v. Ohio, 392 U.S. 1, 27 (1968); Williams v. State,
621 S.W.2d 609, 612 (Tex. Crim. App.1981). 
The record is clear that Frye was operating on the hunch that appellant
had not obtained a driver=s license since the
initial stop.








Accordingly, we hold
the August 1, 1999 stop was not justified by the suspicion that appellant did
not possess a driver=s license.

IV.  Conclusion.

For the reasons stated
in part II of this opinion, we hold the trial judge did not err in overruling
appellant=s motion to suppress
the evidence seized from the stop of appellant=s vehicle on May 2, 1999.  And for the reasons stated in part III of this
opinion, we hold the stop of appellant=s vehicle on August 1, 1999, was
illegal.  Therefore, the evidence
obtained as a result of that stop should have been suppressed.  Viveros v. State, 828 S.W.2d 2, 4
(Tex. Crim. App. 1992).  Consequently,
the trial judge erred in overruling appellant=s motion to suppress that evidence.

The trial court=s judgment in cause
no. D-990-372-R is affirmed, and the trial court=s judgment in cause no. D-000,036-R is reversed.

 

________________________

CHARLES F. BAIRD  

Justice 

 

 

 

Do not publish.

Tex. R. App. P. 47.3.

 

Opinion delivered and filed

this 25th day of April, 2002.











[1]
Former Court of Criminal Appeals Judge Charles F. Baird assigned to this
Court by the Chief Justice of the Supreme Court of Texas pursuant to Tex. Gov=t Code Ann. '
74.003 (Vernon 1998).





[2]Frye
video taped this stop and that video was introduced into evidence at the
suppression hearing.





[3]
The trial judge=s findings of
fact also state that appellant failed to signal his intention to change lanes
on two occasions, but does not state that same was done in an unsafe
manner.  We need not address whether this
conduct constituted a violation of section 545.104(a) of the transportation
code, as Frye=s observation
of the seat belt violation was sufficient to justify a traffic stop.  See Tex.
Transp. Code Ann. '545.104(a)
(Vernon 1999).





[4]The
record is not clear on this point. 
Apparently, Frye was driving in the opposite direction and used a Acrossover@
to change directions in order to follow appellant.





[5]
We also reject any argument that the stop can be justified by Frye=s
conversation with appellant following the initial stop on May 2, 1999, wherein
appellant admitted using marihuana heavily. 
Under the facts presented here, we hold this argument does not give rise
to probable cause, but rather is proof of nothing more than an inchoate and
unparticularized suspicion or hunch which may not serve as the basis for a
lawful detention.  Terry v. Ohio,
392 U.S. 1, 27 (1968); United States v. Sokolow, 490 U.S. 1, 7 (1989); Williams
v. State, 621 S.W.2d 609, 612 (Tex. Crim. App.1981).





[6]
In its brief the State seems to argue this stop may be justified by the Acommunity
caretaking@ exception to
the warrant requirement.  We reject this
argument for three reasons.  First, this
exception is not mentioned in the trial judge=s
findings of fact.  Second, the entirety
of the State=s argument in
support of this position is:  AAn
officer may perform a detention of an individual using the >community
caretaking= function if
the officer reasonably believes that the safety of the individual or community
is threatened.@  State=s
brief pg. 9.  However, this sentence is
not followed by a citation to any authority. 
This briefing is inadequate.  Garcia
v. State, 887 S.W.2d 862, 873 (Tex. Crim. App. 1994) (argument consisting
of one sentence is not adequately briefed.) 
Third, the leading case on this subject is Wright v. State, 7
S.W.3d 148 (Tex. Crim. App. 1999), where the Court of Criminal Appeals
recognized a police officer may stop and assist an individual who a reasonable
person, given the totality of the circumstances, would believe is in need of
help. The Wright Court set out four factors in determining the
reasonableness of such a stop:  (1) the
nature and level of the distress exhibited by the individual; (2) the location
of the individual; (3) whether or not the individual was alone and/or had access
to assistance independent of that offered by the officer; and (4) to what
extent the individual, if not assisted, presented a danger to himself or
others. Id. at 152.  For the
reasons state above, we hold these factors will not serve as an independent
basis to support the stop in the instant case. Stewart v. State, 22
S.W.3d 646, 650 (Tex. App.BAustin
2000, pet. ref'd) (AIt is clear
that the officer stopped appellant solely for the purpose of investigating the
suspected criminal violation.@).





[7]
Specifically, on cross-examination, Frye testified as follows:

 

Q.  You agree with me that it=s
- - it=s usually
pretty easy to go get you a driver=s
license.  You can have on - - you cannot
have one on September 30th and have one on October the 1st.  All you got to do is go down and take a test
and pay a fee in most cases, correct?

 

A.  Yes.

 

Q.  So, it would have been very easy for
[appellant] in this three- or four-month period of time between the first time
- -

 

A.  Sure.

 

Q.  - - you saw him and the second time for him
to go get a license?

 

A.  Sure.